PEARCE *v.* THARP ET AL.

[79 South. 69, Division B.]

1. TAXATION. *Tax deed. Validity.*
   Under Act 1846, section 26 (Hutch. Code, ch. 8, art. 17), fixing
   the first Monday in April of each year for the sale of lands upon
   which taxes were due and unpaid, and providing that no further
   notice should be required than to advertise the same at the court-
   house and at one place in each beat for thirty days before the
   sale, and section 31, prescribing the form of the deed and making
   it *prima-facie* evidence that the tax collector had performed all
   things required of him by law before a sale for taxes and that the
   deed should not be impeached unless for some neglect or fraud
   duly charged and proven, where a tax deed following a sale on
   the first Monday in April, 1847, was made by description refer-
   ring to an unrecorded survey and map, in such case the tax deed
   was *prima-facie* correct and had the effect provided for in the
   statute and the sale was legal and vested title in the pur-
   chaser.

2. EVIDENCE. *Presumptions. Official acts. Survey. Record.*
   Where it was admitted in the record that a court house where a
   survey should be kept has been burned it is fair to assume that
   the survey was properly filed and recorded, where the conveyances
   of the county generally recognized such survey and discriptions
   in dealing with property.

3. TAXATION. *Assessment. Description.*
   Parol evidence can be introduced to supply defects in description
   where references are made to other records or deeds for that
   purpose.

4. SAME.
   An assessment and sale of land for taxes referring to the govern-
   ment subdivision containing the land, defining the lots by parallel
   lines from a shore frontage for an approximate distance back
   was valid.

5. EQUITY. *Striking out evidence. Practice.*
   The growing practice of the chancery courts to sustain motions
   to strike out complainant's evidence and dismiss the bill, is con-
   trary to the history and practice of the chancery courts because
   it is set down upon bill, answer, and proof, and the defendant,
   if he is willing to risk his cause upon the complainant's proof,

or rather the failure of the complainant to prove his case, should submit the case to the chancellor for final hearing and if he is not so satisfied, he should present what proof he desires or may be able to present.

6. APPEAL AND ERROR. *Rendering judgment. Motion to strike complainant's evidence.*

If a defendant elects to move to strike out complainant's evidence in the trial court and secures a favorable decision of the chancellor, he may be held to the result and the supreme court on appeal may, in its discretion, on reversal, enter judgment upon the record.

7. DEPOSITIONS. *Objections. Motion to suppress.*

Objections to depositions, other than to their sufficiency to establish the case, should always be taken by a motion to suppress made in advance of the trial.

APPEAL from the chancery court of Harrison county. HON. W. M. DENNY, JR., Chancellor.

Bill by F. M. Pearce, Jr., against J. H. Tharpe and others. Motion to strike out evidence and grant a judgment dismissing the bill sustained, and complainant appeals.

The facts are fully stated in the opinion of the court.

*Dodds & Montgomery,* for appellant.

*Griffith & Wallace* and *Estopinal & Hayden,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

The appellant filed a bill in the chancery court of Harrison county, alleging that he ·is the owner in fee simple of a tract of land situated in Harrison county, Miss., being known, designated, and described as lot 49 of the Gottschalk survey of the Claude Ladner claim or grant, in township 8 south, range 11 west, and by · virtue of his ownership in fee simple his right of possession to this tract of land accrued on the 11th day of

November, 1912; that the tract of land above described is one of a series of fifty-six lots measured from west to east into which the Claude Ladner claim was orginally subdivided by the Gottschalk survey, and the width of each of these lots is one fifty-sixth of the distance between parallel side lines of said Claude Ladner claim; that each of said lots has a frontage of one-half arpent, or ninety-six feet on the seashore. It is further alleged that the plat of the Gottschalk survey was made by E. S. Drake, civil engineer, in March, 1913, and that this was a reproduction of the original survey made for Gottschalk of the Claude Ladner claim by Jean Guerard, deputy surveyor general, on July 12, 1838, and filed in the office of Edward Barnett, notary public, of New Orleans, June 25, 1838; that said plat shows the location of Camp's addition to the city of Gulfport, which said addition purports to be a plat of lots 45, 46, 47, and 48 of the Gottschalk survey of the Claude Ladner claim but that said addition had been erroneously platted so that it extends wrongfully, unlawfully, and encroaches upon the lot of the complainant, to wit, lot 49 of the Gottschalk survey, and that said survey of said Drake shows the Beach Grove addition to the city of Gulfport, which purports to be a plat of lots 50, 51, and 52 of the Gottschalk survey of the Claude Ladner claim, but had been erroneously platted, and as platted wrongfully extends over and encroaches upon complainant's land lot 49. It is alleged that the E. S. Drake map was a correct survey of the Claude Ladner lands embraced in the Gottschalk survey, and that the map made by the said Drake correctly locates lot 49.

The complainant deraigned his title to the lands from the United States to Claude Ladner by a warrant, confirmed by act of Congress May 28, 1830; from Claude Ladner to Elihu Carver, warranty deed, dated May 1, 1830; Claude Ladner, Marie Ladner, Elihu Carver, and

Justine Carver to Nicholas Carrone, by bargain and sale deed, July 9, 1832; Nicholas Carver to James Gottschalk, bargain and sale deed of May 30, 1836. The Gottschalk survey or subdivision of the Claude Ladner claim or grant was made according to a plan of Jean Guerard, deputy surveyor general, June 12, 1838, filed in the office of Edward Barnett, a notary public for the city of New Orleans, June 25, 1838. This map is not on record in Harrison county, Miss., and at the time of the making of the survey the land in question was a part of Hancock county, Miss.; Harrison county being organized in 1841, formed out of a part of Hancock county. It is alleged and admitted that the courthouse of Hancock county was burned about the year 1854, and, if the plan of the Gottschalk survey was on file in that county, that it was destroyed by fire with all the other records. The next title in deraignment is a tax sale, made the first Monday in April, 1847, embracing lots 48, 49, and 50 of a series of 56 lots laid off in the claim of Claude Lander in township 8 south, range 11 west, said series of lots commencing at the southwest corner of said claim and numbering from 1 to 56, inclusive, and each of them containing one-half arpent front on the seashore, and running back between parallel lines with the said lines of the original survey of said claim about forty arpents; said lots 48, 49, and 50 adjoining each other, and each having a half arpent front, and running back to the rear of said claim, parallel with the lines of the orignal survey of said claim, said lot 48 being bounded on the west by lot 49, formerly belonging to D. B. Brigner, said lot 50 being bounded on the east by lot 51, formerly belonging to John Robisse, sold to W. A. Champlin by Thomas Hester, sheriff and tax collector of Harrison county. Deed from W. A. Champlin and Margaret Champlin, his wife, to Sarah V. Standard, Ordelia A. Standard, Rosalie E. Standard, and Camelia J. Standard,

acknowledged September 23, 1852, conveys lots 44, 45, 46, 47, 48, 49, and 50 of a series of lots in the tracts of land known as the Claude Ladner claim in township 8 south, range 11 west, said claim being laid off into fifty-five lots of one-half arpent each, commencing at the southwest corner of said claim and numbering towards the east from 1 to 55, and each lot having a front of one-half arpent on the seashore or Gulf of Mexico, and running back north twenty-eight degrees west one mile or thereabouts; and from Fanny O. Fowler to Mrs. Sarah V. Phelps and Camelia J. Wade, quitclaim, consideration fifty dollars and giving of exchange for other property in Mississippi City, Miss., conveying all right, title, and interest in and to ten certain lots according to plan of survey of the Claude Ladner and Gottschalk claims, in township 8 south, range 11 east, near the town of Longbeach, Harrison county, Miss., said lots being numbered 40, 44, 45, 46, 47, 48, 49, 50, 51, and 52, and reciting, "It being understood I only convey such rights as I may have as an heir or my father Marcellus J. Standard." Mrs. Camelia J. Wade to Collins Phelps, warranty deed, February 16, 1898, consideration five hundred dollars, conveys her undivided half interest in certain lots, including lot 49 of the Gottschalk survey of the Claude Ladner claim, sections 7 and 8 township 8, range 11, Harrison county. Sarah V. Phelps and Collins Phelps to W. E. McDonald special warranty deed, dated April 30, 1902, conveys lot 49, Gottschalk survey, in sections 5, 6, 7, and 8, township 8, range 11, Harrison county, Miss., described more particularly as follows: Beginning at a point four thousand six hundred and eight feet north sixty-two degrees east from the northwest corner of the Claude Ladner claim; thence running north sixty-two degrees east, ninety-six feet; thence south twenty-eight degrees east, to the seashore of Mississippi Sound; thence south sixty-two degrees west, ninety-six feet; thence north

twenty-eight degrees west, to point of beginning. W. E. McDonald to F. M. Pearce and Annie M. Pearce, special warranty deed, dated November 12, 1902, conveys lot 49, Gottschalk survey, more particularly as in the deed above. Tax sale to individuals, March 2, 1885, shows lot 49, one-half arpent east and west, twenty-nine arpents one hundred and two feet north, section 8, township 8, range 11 west, assessed to unknown, and purchased by A. Barnitz, and redeemed by Sarah V. Phelps February 26, 1886. F. M. and Annie M. Pearce to J. T. Jones, right of way thirty feet wide across lot 49, Gottschalk survey.

The answer of the several defendants denied the principal allegations of the bill. On the hearing the complainant introduced the above chain of title, together with recordation of the same, together with field notes setting out the government survey of the Claude Ladner claim, and field notes showing Bartholomew Pellerin claim as made by the United States government, with a survey of the Widow Ladner claim, adjoining the Claude Ladner claim, and depositions of numerous parties amoung them the deposition of E. S. Drake, who made the survey made exhibit to the bill in this case. He testified that he is a civil engineer and abstract man of experience of fifteen years or more, and that his specialty was in finding lost or obliterated lines and corners of government surveys, and also had considerable experience in railroad engineering, drainage work, and other branches of civil engineering; he is trained through a correspondence course and the continual study of approved text-books; that he was familiar with the field notes of the Claude Ladner claim as shown in field notes of the government survey of Harrison county, Miss., and that, according to recitals of numerous instruments of record in Harrison county, Miss., there was a subdivision of the Claude Ladner

claim for Gottschalk by Jean Guerard, deputy surveyor
general, on June 12, 1838, and filed in the office of
Edward Barnett, notary public, of New Orleans, La.,
and that, so far as he knew, there was only one sur-
vey of the Claude Ladner claim; that he had had
occasion to examine all the obtainable data with ref-
erence to the Gottschalk survey of the Ladner claim,
and from this data reproduce a copy of the original
plan of subdivision, and that he had done this for
the appellant in this case; that he had seen what
had purported to be a copy of the original map,
but had not seen the original, though he had
searched for it in the files and notarial records
in New Orleans, and it could not be found; that the
said Claude Ladner claim was divided into fifty-six
lots, and that he had seen the record of several deeds
made after the Gottschalk survey, and that he made
a survey of the Ladner claim in which he located the
northeast corner of the Bartholomew Pellerin claim
by the field notes of the United States survey; that
this corner had been in place for many years, and ap-
peared to be accepted by all the surveyors working
in that district. As an additional check on this cor-
ner, the witness ran down the eastern line of the
Bartholomew Pellerin claim nine chains fifty links to
the section line between sections 11 and 12, township
8, range 12; thence north twenty-two chains twenty-
eight links to the corner of sections 2, 11, 1, and 12,
of said township and range, where he proved the cor-
ner by field notes of the government survey. This
tie, he testified, is an absolute check on said location
at said northeast corner of the said Pellerin claim,
and is the same tie taken by the United States dep-
uty surveyor in the year 1843, as evidence by the
government field notes. He then continued the sur-
vey of the eastern line of the Pellerin claim, and at
forty-one and seventy-two hundredths chains from

the northeast corner .of the said Pellerin claim set. a
stake for the northwest corner of the Widow Ladner
claim, and continued southerly on the line between
the Pellerin claim and said Ladner claim to the beach,
proved corner, and found old government survey lines,
then returned to the stake set in northwest corner of
the Widow Ladner claim, ran north sixty-two degrees
east on the north line of said Ladner claim eighty chains .
sixty-three links to the northeast corner of the said
Widow Ladner claim, which were proved by bearings giv-
en in the government field notes, then ran south twenty-
eight degrees east on the eastern line of said Widow
N. Ladner claim seven and eighty-one hundredths chains
to the northeast corner of the Claude Ladner claim,
and continued on said course on line between Widow
N. Ladner claim and said Claude Ladner claim eighty-
and fifty hundredths chains to the beach; cut out the
blazes of the government survey line along the line
he was running. This line runs with the fence be-
tween the property now or formerly belonging to Mrs.
C. M. Soria and the property now or formerly belong-
ing to Louis Hill. This fence, he was informed, was
for more than fifty years considered the boundary line
between the Widow Ladner and Claude Ladner claims.
He locates by his testimony exactly the boundries
of lot 49 as being four thousand five hundred and six-
ty-one and seven hundred and twenty-eight thou-
sandths feet from the west line of the Claude Ladner
claim, on a bearing north sixty-two degrees east; the
location of the eastern line of said lot 49 as four thou-
sand six hundred. and fifty-six and seven hundred
and sixty-four feet from said western line of the said
Claude Ladner claim on said bearing, basing this upon
the fact that the Claude Ladner was divided. into
fifty-six lots, supposed to have a frontage of ninety-
six feet each. This witness testifies that the discrep-
ancies in the present survey and former surveys

may be accounted for on the fact that on the former survey the chain was made of small steel rods connected with short links. These links would wear and become elongated so that after a chain had been used for three or four months it would be several inches too long. For this reason nearly all government surveys in this part of the country were found to be longer when measured with the standard steel tape than the government field notes call for, and this fact is well known to all reputable surveyors.

At the conclusion of the complainant's evidence the defendants moved the court to strike out the evidence and grant a judgment dismissing the claim of the complainant and his bill, which motion the court sustained.

The record is voluminous and complicated, and it is impossible, in the course of an opnion, to set out in full the contentions and evidence of the parties. It seems, however, that the attack upon complainant's case resolved itself principally into two contentions: First, that the tax deed made by Hester, tax collector, to Champlin, is void; and, second, that there is no record in the county records of the Gottschalk survey of the Ladner claim. It is contended that the tax sale is void: First, because the assessment and sale was made by description referring to this unrecorded survey, or based upon this unrecorded survey; and, second, because the taxes for four years were included in this sale, the deed showing that the taxes for 1846, 1845, 1844, and 1843 were mentioned in the deed. Prior to the act of March 5, 1846 (Hutchinson's Code, p. 184), there does not seem to have been a specific provision as to when lands should be sold for default in payment of the taxes. Act Feb. 6, 1841, section 37 (page 177, Hutchinson's Code), provides that, if any taxes on land shall remain unpaid on the 1st day of Febuary in the year in which the

same shall be assessed, and no personal property can
be found from which the taxes can be collected, the
collector shall sell the land by giving two months' no-
tice of the sale of lands belonging to residents of the
state, but not residents of the county in which the
land lies, and one month's notice of the sale of lands
belonging to residents of the county in which the land lies
and three months' notice of land belonging to nonres-
idents, said notice to be printed in a paper in the
county in which the land lies, or, if there is no paper,
the nearest paper thereto, and by posting notice at
the courthouse door, which advertisement shall specify
the time and place of sale, the name of the person
whose property is taxed, the name of the persons to
whom it was granted, if known, the amount of taxes
due thereon, and description of the land as designated
by the original map or survey, or by particular
boundaries and contiguous tracts, and in case of town
lots, number of lot and square as designated on orig-
inal plat.    Act 1846, section 26 (page 189 of Hutchin-
son's Code), fixes the first Monday in April of each
year as the day of sale for the sale of lands upon
which taxes are due and unpaid, and provides that
for sale of said lands no further notice shall be re-
quired than to advertise the same at the courthouse
and at one place in each beat thirty days before the
sale, and that he shall continue the sale from day to
day until the same shall have been completed.    Sec-
tion 31 of this act, appearing on page 190 of Hutch-
inson's Code, prescribes the form of the deed, which
is precisely followed in the present case, and provides
that said deed shall be *prima-facie* evidence that the
tax collector performed all things required of him by
law before selling same for taxes, and said deed shall
·not be impeached unless for some neglect or fraud duly
charged and proven.    On this record we think that
this deed must be given the effect provided for in the

statute, and, treating it as *prima-facie* correct, we are bound to hold on this record that the sale was proper, and vested title in the purchaser. It was admitted in the record that the courthouse at Bay St. Louis was burned, and it is fair to assume that the survey was properly filed and recorded, as the conveyances of the county generally recognize this survey and descriptions in dealing with property.

We see no reason to hold that the land could not be assessed for taxes on the description contained in this record. The assessment and sale here refers to the government subdivision which contained the land. This court has recently, through division A, decided, in the case of *Albritton* v. *Fairley*, 116 Miss. 705, 77 So. 657, that parol evidence was admissible to supply a description under this section, where a part of the lot was excepted from the assessment and conveyance. It seems to be a general rule that parol evidence can be introduced to supply defects in description where references are made to other records or deeds for that purpose. However, we think the description shown in this record is a proper description. It will be further noted that, as to the title of the defendants, as shown on the map introduced in evidence, as well as the proof of complainant in deducing the chain of title, the defendants claim through the Gottschalk survey, in the Beach Grove subdivision to the city of Gulfport. The title of the map is "Map of Beach Grove Subdivision of Part of the Gottschalk survey of the Claude Ladner Grant, in the City of Gulfport, Township 8 South, Range 11 West." In the Camp's addition to the city of Gulfport map the certificate is:

"That I have surveyed for H. A. Camp all of that part of lots 45, 46, 47, and 48 of the Gottschalk survey of the Claude Ladner grant that lies south of the Louisville & Nashville Railroad," etc.

To hold, as we are asked to hold, that the description shown in this record is insufficient to sustain a title, in the absence of any other showing to the contrary, would be practically to unsettle numerous titles along the coast.

We desire, before closing the opinion, to call attention to what seems to be a growing practice in some of the chancery courts to sustain a motion to strike out the evidence of the complainant. We think this is contrary to the history and practice of the chancery courts, because it is set down upon bill, answer, and proof, and the defendant, if he is willing to risk his case upon the complainant's proof, or rather the failure of the complainant to prove his case, should submit the case to the chancellor for final hearing, and, if he is not so satisfied, he should present what he desires or may be able to present. The result is that, if the present practice is followed, this court cannot render a judgment finally here as required by the Code, unless we treat the defendant's motion as being equivalent to setting down a cause for final decision. We hesitate to apply that rule in this case, for the reason that there is claim of adverse possession presented, and perhaps the defendants did not intend to risk their case upon the strength of the complainant's proof. We serve warning, however, that if defendants elect to make this motion and secure a decision of the chancellor favorable to them, they they may be held to the result, and this court may, in its discretion, enter judgment here upon the record. We never heard of a motion to strike out depositions on a hearing of a cause on the merits, but objections to depositions, other than to their sufficiency to establish the case, have always been taken by a motion to suppress made in advance of the trial. We see no reason why the rule should be changed merely because the statute permits oral evi-

dence to be taken in certain cases instead of depositions.

The judgment is reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*