## Harry H. Tobias, Plaintiff in Error, v. Alma C. Tobias, Defendant in Error.

### Gen. No. 6,411.

1. DOMICILE, § 6*—*when new residence is acquired.* The place of residence of a party is a matter of intention, and when a residence has once been obtained it is not lost by any temporary departure from that place, which remains the residence of the party until he or she has acquired another residence, which does not mean merely a temporary abode.

2. DOMICILE, § 16a*—*when evidence shows residence at particular place.* Evidence *held* sufficient to show that defendant did not in law or fact acquire or intend to acquire a permanent residence

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

elsewhere than a certain city, where she and plaintiff were residing when they separated, and that she was a resident there at the time she filed her bill for divorce in question.

3. APPEAL AND ERROR, § 1270*—*when presumed that evidence was received to support finding as to jurisdiction.* The findings of a court of general jurisdiction as to jurisdictional facts necessary to constitute service are conclusive against collateral attack unless irreconcilable with facts otherwise disclosed by the record, and in aid of such finding it will be presumed on appeal that evidence was heard to support the finding where it is competent to receive evidence for that purpose.

4. DIVORCE, § 77*—*when finding in decree shows service of summons by copy of bill and notice.* The service of summons by copy of the bill and notice are conclusively shown by a finding in decree of divorce to that effect, notwithstanding the affidavit of service is defective, where the certificate of evidence contains no proof on the question of service.

5. EQUITY, § 122*—*how proof of service may be made.* While section 14 of the Chancery Act (J. & A. ¶ 894), relating to service on nonresident of a copy of the bill, permits such service to be proved by affidavit, it also provides that service may be proved "to the satisfaction of the court," and consequently proof otherwise than by affidavit may be made.

6. DIVORCE, § 22*—*what is a sufficient allegation of residence of complainant.* A description in a bill for divorce of complainant as "Your oratrix, Alma C. Tobias, of Peoria, in the County of Peoria, State of Illinois," is a sufficient allegation of residence in Peoria county.

7. EQUITY, § 479*—*when decree not granted.* Where a bill filed to set aside a decree of divorce contains no allegation of any lack of sufficient service in the divorce suit, complainant is not entitled to a decree upon a ground not alleged in the bill.

8. EQUITY—*when will set aside decree.* Courts of equity will not set aside a decree upon the ground that it was obtained by false evidence, but only for fraud, which gives a court colorable jurisdiction over the defense presented.

9. DIVORCE, § 134*—*when evidence shows intention of husband not to live with wife.* Evidence *held* sufficient to warrant the finding that complainant, in a suit to set aside a decree of divorce procured by his wife against him, did not intend at the time he left his wife to live with her again, but intended to roam about the world at will, free from any responsibility to his wife and child.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Tobias v. Tobias, 208 Ill. App. 539.

Error to the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 16, 1917.

CLYDE CAPRON, for plaintiff in error.

WEIL & BARTLEY and SHEEN & GALBRAITH, for defendant in error.

MR. JUSTICE DIBELL delivered the opinion of the court.

On December 1, 1905, Mrs. Alma C. Tobias filed in the Peoria Circuit Court a bill for divorce against her husband, Harry H. Tobias, and had service by copy of bill and copy of summons out of the State. Defendant was defaulted, and on or about March 20, 1906, she had a decree for divorce, from which no appeal or writ of error was ever prosecuted. On September 2, 1908, Tobias began this suit by filing a bill in said Circuit Court against Mrs. Tobias, in which he sought to vacate said decree of divorce. It was not a bill of review, for it did not set out any part of the record, but it alleged lack of jurisdiction in the court for reasons hereinafter stated, and that the decree was obtained by false testimony. The cause was referred to a master, who took evidence and made a report adverse to Mrs. Tobias. Her objections thereto were sustained and there was a decree dismissing the bill. The cause was removed to this court by writ of error. Mrs. Tobias filed certain pleas to said writ of error, to which we sustained a demurrer, and held that we were thereupon required to reverse the decree regardless of the merits. The case is reported as *Tobias v. Tobias*, 193 Ill. App. 95. The cause was reinstated in the court below and referred to another master to report the proofs with his conclusions, and he took proofs and made a report favorable to Mrs. Tobias. Exceptions thereto were over-

ruled and there was a decree dismissing the bill for want of equity. Tobias prosecutes this writ of error to reverse that decree. In this court he presents three reasons why he was entitled to the relief he sought, namely: (1) That Mrs. Tobias did not reside in Peoria County when she filed her bill for divorce and that therefore the Peoria Circuit Court had no jurisdiction; (2) that there was on file in that case no sufficient proof of service and therefore that court had no jurisdiction; and (3) that the decree was obtained by false evidence.

Section 5 of the Divorce Act (J. & A. ¶ 4220) requires that the proceedings shall be had in the county where the complainant resides. Prior to November, 1903, Tobias and his wife had lived in the City of Peoria. In that month they departed therefrom. Mrs. Tobias went to the home of her parents in Mason county, Illinois. Tobias claims that she thereby lost her residence in Peoria county. The place of residence is a matter of intention, and when a residence has once been obtained it is not lost by any temporary departure from that place, and it remains the residence of the party until he or she has acquired another residence, which does not mean merely a temporary abode. This is held in many cases, and among them *Smith v. People,* 44 Ill. 16; *Hayes v. Hayes,* 74 Ill. 312; *Cooper v. Beers,* 143 Ill. 25; *Imhoff v. Lipe,* 162 Ill. 282; *Hill v. Hill,* 166 Ill. 54; *Palmer v. Riddle,* 197 Ill. 45; *Widmayer v. Davis,* 231 Ill. 42; *Welsh v. Shumway,* 232 Ill. 54; *Holt v. Hendee,* 248 Ill. 288: In *Hayes v. Hayes, supra,* where the question was whether one Dr. Hayes was a resident of Rock Island, notwithstanding he had gone to Iowa and lived in various places for long periods of time and had voted there at a presidential election, the court said: "To effect a change of domicile there must be an actual abandonment of the first domicile,

coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home.'' In *Holt v. Hendee, supra,* the court said: ''In order to bring about a change of residence it is necessary that there be not only an intention to change the residence, but the change must actually be made by abandoning the old and permanently locating in the new place of residence.'' Practically the same thing was decided in several other of the cases above cited. At the time when the parties left their home in the City of Peoria it was agreed that Tobias should go to Oklahoma and enter into possession of a farm there owned by his father, and Mrs. Tobias should go to the home of her parents near Forest City, Mason county, and that in the spring she should go to her husband in Oklahoma. She testified that she was very much attached to her home in Peoria and was very unwilling to leave it, and that she had no intention of making her permanent home in Mason county. For reasons hereinafter stated she did not go to Oklahoma. She was a music teacher, was frequently in Peoria thereafter, and went into the business of selling pianos for a company located in Peoria. If her testimony is true, she never intended to take up her residence in Mason county. Before the divorce suit was begun she consulted Peoria lawyers on the subject and told them these facts and told them that she intended doing business in Peoria as soon as she could, and they advised her that under the circumstances narrated she had not acquired a residence in Mason county and had not lost her residence in Peoria county, and thereupon they prepared and filed a bill in Peoria county. Tobias called several persons who lived near them in the City of Peoria and who knew of the removal, and they testified that from the conversations with Mr.

and Mrs. Tobias they understood that she was remov-
ing to Mason county only temporarily and expected
to go to Oklahoma in the following spring.     Two
neighbors testified that Mrs. Tobias told them that
while she was telling her husband that she would go
to Oklahoma in the spring, in fact her people would
not permit her to go and she did not expect to go.
This testimony Mrs. Tobias denied.   Before they left
Peoria they sold a little of their furniture and part
of it was shipped to her at Forest City, and part of it
was shipped to her husband's parents in Washington,
Tazewell county.   Certain witnesses for Tobias tes-
tified that at times when they saw Mrs. Tobias in
Peoria and she was going back to Mason county, she
said she was going home.   Mrs. Tobias testified that
she had always called the residence of her parents
in Mason county "home," and that while living with
her husband, whenever she went down to Forest City
to visit her parents she had told people she was going
home.   We are of opinion that under the evidence
and the law as held in this State Mrs. Tobias did not
acquire and did not intend to acquire a permanent
residence in Mason county, and that she never lost
her residence in Peoria county, and that the bill was
properly filed there.

The proof filed in the divorce case of service of copy
of bill and notice of suit was by affidavit and was
defective in two respects.   Defendant contends that
therefore the court did not acquire jurisdiction to
render the decree of divorce.   While the statute, sec-
tion 14 of the Chancery Act (J. & A. ¶ 894), permits
such service to be proved by affidavit, yet it elsewhere
provides that such service may be proved "to the sat-
isfaction of the court."   This therefore permitted
other proof than an affidavit.   The decree of divorce
fully found service by a copy of the bill and a copy of
the summons and by a reading of each to Tobias.
The findings of a court of general jurisdiction, as to

jurisdictional facts necessary to constitute service, are conclusive against collateral attack unless irreconcilable with facts otherwise disclosed by the record, and in aid of such finding it will be presumed that evidence was heard to support the finding where, as here, it is competent to receive evidence for that purpose. *Figge v. Rowlen,* 185 Ill. 234. There is a certificate of evidence on file in the divorce case and it does not contain such proof, but it only purports to be a certificate of the evidence offered by Mrs. Tobias to maintain the issues on her part, and it does not purport to contain any proof heard upon the question of service. It is therefore conclusively found that service was had by copy of bill and notice. It has been argued that the bill did not allege that Mrs. Tobias resided in Peoria county, and that the decree did not so find. The bill described complainant therein as "Your oratrix, Alma C. Tobias, of Peoria, in the County of Peoria, State of Illinois." This was a sufficient allegation of residence in Peoria county. *Parker v. Parker,* 61 Ill. 369; *Way v. Way,* 64 Ill. 406; *Sommers v. Sommers,* 16 Ill. App. 77. The decree found that all the material facts alleged in the bill of complaint are true, and this is a sufficient finding that the allegation of residence is established. *Hill v. Hill, supra.* Moreover, it is entirely clear from the testimony of Tobias that he was so served with a copy of the bill and of the summons. He claims he was served at two different times with copies of two different bills, one of which he asserts was longer than the bill in this divorce case. He testifies that after he received the copy of the bill he consulted a lawyer where he then was and stated to him the facts from his standpoint and was advised that if he had stated the facts correctly his wife could not get a divorce, and he thereupon decided that he would pay no further attention to the case. But again, the bill in this case contains no allegation of any lack of suffi-

cient service in the divorce case. Since the decree
was not attacked by this bill on that ground at all,
Tobias could not have a decree in the present case
on that ground not alleged in his bill.

The bill alleged that the evidence upon which the
divorce was obtained was false. Courts of equity will
not set aside a decree upon the ground that it was
obtained by false evidence, but only for fraud which
gives a·court colorable jurisdiction over the defense
presented. *Evans v. Woodsworth,* 213 Ill. 404, and
cases there cited; *Graves v. Graves* (Iowa), 10 L. R.
A. (N. S.) 216; and *Bleakley v. Barclay* (Kan.), page
230 of the same volume, and a note in said volume
extending from page 230 to page 243. As it appears
here that the divorce suit was brought in the proper
county and that there was due and proper service, we
are of the opinion that the court below had no power
in this proceeding to vacate the decree of divorce on
the ground that the evidence by which it was obtained
was false. We, however, deem it proper to consider
the evidence on that subject. The charge in the bill
for divorce was desertion. The main facts favorable
to Mrs. Tobias are as follows: Before she was mar-
ried she was a music teacher and had saved $500. One
week after the marriage her husband and she settled
in Peoria and lived there 2 years, and at the time
they left Peoria had a daughter 4 months old. While
they lived in Peoria, Tobias did not work steadily at
anything, except once for 4 months. He generally
had several different jobs every week. He earned
but little. He did not support his family. They were
supported, partly by her parents and partly by his,
and sometimes by one of her brothers. Tobias some-
times went away and was absent for weeks and left
his wife without sufficient fuel and provisions in the
house. In August, 1903, his father had bought a farm
in Oklahoma and his mother had bought another farm
adjoining it, and the father offered to put his son,

Harry, on his farm and let him have the use of it for the payment of taxes, and the mother offered to give Harry her farm. Thereupon Tobias, who was of a roving nature, proposed that he and his wife remove at once to Oklahoma. Her brother went to Oklahoma and came back and reported that it was not a fit place for a woman to live; that there were hardly any women thereabouts except Indians and half breeds; that the water was impregnated with alkali and very harmful, and the soil very unproductive. The parents of Mrs. Tobias thereupon sent word to her that she ought not to go there at that time with this little child, and it was arranged in November that Tobias should go to Oklahoma and get located and that Mrs. Tobias would go to him in the spring. She then went to her parents and he never thereafter furnished her anything for her support. He went to St. Louis, worked there a week or two, and then went to Louisiana and worked there for a while, and then to Little Rock, and worked there a while. Each time he claimed he was getting large wages, but he only stayed in each place a short time. From one of these places he wrote his wife that he thought some of taking a trip through the south. At some time during his peregrinations he was in Dallas, Texas. He reached Oklahoma on July 4, 1904. His excuse for not going directly from Peoria to Oklahoma as planned was that after he reached Louisiana he was informed that the farm was in the possession of a tenant whose lease expired July 1, 1904. George Tobias, an uncle of Harry, testified that he met Harry in Oklahoma after he reached there, and he thought in 1904, and Harry told him that he did not intend to live with his wife any more, and that he was not going to live with her, and that he contemplated getting a divorce. Tobias claims that he wrote for his wife to come, but upon examining his letters to his wife, offered in evidence, he was unable to point out any such request. He then insisted

that he had written other letters not produced, but he finally testified that what he meant was that he had written to his mother in Tazewell county, Illinois, asking her to ask his wife to come on.  There was no proof that his mother ever made any such request of Mrs. Tobias.  In July, 1905, he brought suit against his wife in Oklahoma for divorce.  He testified that he dismissed the bill the next day after he began the suit, but other evidence shows that the suit was pending long enough so that his wife received notice thereof and employed lawyers in Peoria and in Oklahoma and filed an answer and a cross-bill and he then dismissed his bill and she dismissed her cross-bill.  At one time while he was in Louisiana or Arkansas, he wrote his wife that he could make a great deal of money by raising palmettoes and that he thought of going into that business.  When he was contemplating a divorce he wrote requesting $15 from his wife towards the expenses thereof.  When she did not respond he wrote demanding $45, and afterwards wrote that it would cost her $75, apparently meaning that he intended to get that amount from her.  He once wrote demanding $20 from her.  He never sent her any money, except that long after this divorce was obtained by Mrs. Tobias he sent her $50, which she immediately returned to him.  His evidence of what he actually received from the farm in Oklahoma while he was upon it shows that it would have been entirely insufficient to support his wife and child.  While they lived in Peoria and at a time when his wife was unable to go about because of her approaching maternity, he spent many evenings away from home and claimed that he was writing insurance.  His wife disbelieved this and soon after her child was born she followed him one night and found him in the home of a certain woman whose name we omit.  After he was in Oklahoma the proof indicates that this woman corresponded with him and was very anxious to know if

he had gotten his divorce, and the father of Harry was investigating to learn her antecedents and character and whether she would be likely to get along with Harry as his wife, and it is evident that the father expected that Harry would get a divorce from his wife and marry this woman. It is made to appear by the evidence that the parents of Harry Tobias wished Mrs. Tobias to get a divorce from their son and sympathized with her in her position. Harry wrote a letter to the solicitors of Mrs. Tobias in which he indicated he would fight any application for a divorce by her based on the grounds of cruelty or any other untruth, but that she could obtain a divorce on the grounds of desertion. We think the chancellor might well conclude from this evidence that when Tobias left Peoria he did not intend to live with his wife again, but intended to roam about the world at will, free from any responsibility to his wife and child. It is true that Tobias gave testimony differing in some respects from what is above set out, but he does not deny the fact that he did not go to Oklahoma as intended, that he never sent any money to his wife for the support of herself and child, that he never made any arrangements for her to come to Oklahoma or sent her any money for that purpose. His letters to her were not calculated to inspire any confidence in his real intention to provide a home for her. He testified to interviews with her long after she obtained her divorce, sought by her, in which she expressed a purpose to return to him after the death of her parents. She admitted the interviews, denied that she sought them, and denied that she ever made any statement indicating any purpose or willingness to return to him. These interviews, however, have no bearing on the issues in this case.

Counsel for Mrs. Tobias present other reasons why the court below properly dismissed this bill, but our conclusions above stated are decisive of the case, and

we deem it unnecessary to consider or discuss those other positions. The decree ,is affirmed.

*Affirmed.*

Niehaus, J., took no part.