(No. 13680.—Reversed and remanded.)
W. C. ABEL *et al.* Appellees, *vs.* ANDREW FLESHER, Appellant.

*Opinion filed February 15, 1921—Rehearing denied April 8, 1921.*

1. PRACTICE—*motion to dismiss bill for want of equity has no effect.* A motion to dismiss a bill for want of equity is not recognized in chancery practice and amounts to nothing but a submission of the cause.

2. EQUITY—*jurisdiction of equity to enjoin a trespass.* A court of equity may enjoin a trespass where the complainant has no adequate remedy at law, or where it is necessary to prevent a multiplicity of suits, or where the complainant's title is admitted or has been established in an action at law and repeated trespasses are threatened of such a character that the amounts recoverable as damages in actions at law would be so small and disproportionate to the vexation and expense of the actions as to render the remedy at law inadequate.

3. SAME—*general allegation of inadequacy of remedy at law is not sufficient.* A general allegation of the inadequacy of any remedy at law is not sufficient to maintain a bill to enjoin a trespass, but such facts and circumstances must be alleged and proved as to show that an irreparable injury for which the law affords no adequate redress will result from the acts complained of.

4. INJUNCTION—*when equity will not enjoin alleged trespass by commissioner of highways.* Equity will not enjoin an alleged trespass of a commissioner of highways in destroying a fence along a highway, which complainant claims is on his land, where the complainant's title is denied by the commissioner, as an action at law for damages will settle the question of title and will be conclusive in all future actions.

5. SAME—*when defendant is entitled to damages, consisting of solicitors' fees.* Where a temporary injunction is dissolved the defendant is entitled to suggest his damages, consisting of his solicitors' fees upon the hearing on the motion to dissolve, and may have the damages assessed whether or not the case has been disposed of upon the merits.

APPEAL from the Circuit Court of Christian county; the Hon. T. M. JETT, Judge, presiding.

LESLIE J. TAYLOR, and W. B. McBRIDE, for appellant.

HOGAN & REESE, and R. C. NEFF, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

W. C. Abel and Lucinda Abel filed a bill in the circuit court of Christian county against Andrew Flesher, commissioner of highways of the town of Taylorville, to restrain him from removing a fence or filling a ditch alleged to be between the complainants' land and the highway. A temporary injunction granted by the master in chancery on the filing of the bill was dissolved on the defendant's motion and suggestions of damages claiming solicitor's fees were filed. The complainants filed an amended bill, a demurrer to which was overruled and an answer was filed. The cause was heard upon the pleadings and evidence, and a decree was entered granting the relief prayed for and denying to the defendant any damages upon his suggestions of damages, from which the defendant has appealed.

The complainant W. C. Abel was the only witness who testified for the complainants. The defendant presented evidence in support of his suggestions of damages but no other evidence. He moved the court to dismiss the bill for want of equity. The chancellor denied the motion, and this action is assigned as error. Such a motion is not recognized in chancery practice. It is of no effect and amounts to nothing but a submission of the cause.

The amended bill alleged that the complainants owned in fee and were in possession of the west half of the southwest quarter of section 17, township 13, north, range 2, west of the third principal meridian; that along the east side of said land there had been for more than forty years a public highway, and beginning at the northeast corner of the land and continuing south on the east side thereof for eighty rods there had been for more than twenty-five years a fence which marked the west line of the public highway, and continuing on south for a distance of eighty rods an

open ditch had marked the western boundary of the highway; that on both sides of the road for the entire distance, except the south eighty rods on the west side, fences had been built and maintained by the respective owners, and the lines of the highway as shown by the fences were recognized by the owners and the public and the former commissioner of highways as the true lines of the highway, and that all public travel within the last twenty-five years had been exclusively confined to the portion of the highway lying between the fences; that the highway had not been laid out under the statute but was a highway by user or dedication, and its boundary on the west side did not extend further than the fence and ditch; that the complainants became the owners of the described land in the fall of 1916 and tore down and removed the old fence on the north eighty rods and built in lieu thereof a new fence, and continued such new fence just west of the ditch along the west side of the highway eighty rods to the south line of the complainants' land, all of the fence being on the west side of the highway and upon the complainants' land; that on March 20, 1917, the commissioner notified the complainant W. C. Abel to remove the fence within ten days, otherwise the commissioner would do so and sue to recover the cost of removal; that complainants did not comply with the demand, and on April 10, 1917, the commissioner pulled up the south eighty rods of the fence and threw it back on the complainants' field and threatened the complainants that if they attempted to replace it he would tear it out every time and would prosecute them, and further, that if they did not remove the north eighty rods of fence he would likewise tear that down; that on the next day the commissioner, with a gang of men, began to pull up the fence on the north eighty rods and Abel requested him not to do so, but the commissioner persisted and threatened Abel with bodily injury, drawing a shot-gun upon him and again threatening to tear down the fence if it was replaced; that

the commissioner then tore down the north eighty rods of fence and threw it on the complainants' land and removed about two feet of the complainants' land to fill the ditch along the highway so that the highway could be extended to a width of forty feet, and threatened to continue to remove so much of said land as would be necessary to fill up the ditch for that purpose; that complainants desired to enclose their land with a good fence, but if the commissioner should persist in his threatened acts of trespass a continuation of such acts would give a prescriptive right to an easement in complainants' land unless they should resort to many suits at law, which would be vexatious and expensive and damages recoverable would be disproportionate to the injury and loss sustained; that there were already suits and prosecutions growing out of the matters alleged; that complainants were without adequate remedy at law and that the acts done and threatened by the commissioner would result in irreparable injury.

The answer did not admit the complainants' ownership of the land as alleged in the bill and denied that they had ever been in possession of all of the land, but alleged that for more than forty years the east thirty feet of said land had constituted the westerly portion of a public highway, which had been dedicated by the owners of the land of a width of more than fifty feet; that beginning about thirty feet west of the northeast corner of the land described in the bill and continuing southerly parallel with the east line thereof, there had been for twenty-five years or more a fence marking the easterly boundary line of said land and westerly boundary line of the highway, and on the south eighty rods in years past there had been a fence on the westerly side of the ditch, which ditch was constructed by the commissioner of highways for the drainage of said land and highway; that there were fences along either side of the highway maintained by the respective land owners, which were on the true and correct lines of the highway,

and that public travel was confined between the fences as they originally existed. The answer admitted that the complainants removed the old fence on the north eighty rods and built a new fence in place thereof, but alleged that the new fence was not built upon the line of the old fence or upon the line of the public highway as the same had existed for more than forty years, but encroached upon and attempted to include within the farm land a portion of the public highway; that the fence built by the complainants along the south eighty rods west of the ditch also encroached upon the public highway and interfered with its proper grading and drainage; that the line of the entire 160 rods of fence constructed by complainants was not parallel with the eastern boundary line of said land nor built on the north and south line of the highway but encroached thereon more at some points than at others, so that at the northerly end of the tract of land the highway was left of the approximate width of forty feet and at the southerly end of a width of approximately thirty-six feet.

Abel testified that he and his wife were the owners of the land in controversy; that there was an old woven wire fence along the north forty acres, which had been there a number of years and was very rusty when they got possession of the land in March, 1916. This fence he tore down in the following fall. On the east side of the south forty acres there was a ditch, which in April or May of 1917 was a foot and a half or two feet deep. This ditch extended a little north of the south forty. The land in the south forty had been in cultivation almost to the edge of the ditch. In the spring of 1917 he commenced to build the fence, beginning at the south end about a foot and a half from the edge of the ditch, right where the plow had run the year before, and running directly north in a straight line with and at no point further east than the line of the old woven wire fence. He knew the land for three or four years prior to 1915.

A court of equity will interfere to enjoin a trespass only where the complainant has no adequate remedy at law or where it is necessary to prevent a multiplicity of suits by different persons assailing the same right. An exception to this rule exists where the complainant's title is admitted or has been established in an action at law and repeated trespasses are threatened of such a character that the amounts recoverable as damages in actions at law would be so small and disproportionate to the vexation and expense of the actions as to render the remedy at law inadequate. In *Commissioners of Highways* v. *Green,* 156 Ill. 504, which was a suit against commissioners of highways for an injunction restraining them from trespassing upon land of the complainant which was claimed as part of a highway, it was held that an injunction ought not to have been granted in the absence of any allegation or proof of the insolvency of the defendants or their inability to respond in damages for any trespass they might commit. Under such circumstances it was held that the complainant had a complete and adequate remedy at law. It was also held that to warrant interference upon the ground of multiplicity of suits there must be different persons assailing the same right, and if the right is disputed by two persons only, not for themselves and all others in interest but for themselves alone, the suit could not be maintained. These principles are sustained by the cases of *Thornton* v. *Roll,* 118 Ill. 350, *Poyer* v. *Village of Desplaines,* 123 id. 111, and *Chicago Public Stock Exchange* v. *McClaughry,* 148 id. 372, which were cited in support of them. They are also recognized in the case of *Cragg* v. *Levinson,* 238 Ill. 69, in which the right to an injunction was sustained, but it was placed expressly on the ground that the complainant's right was not denied but was admitted by the demurrer to the bill upon which that case was disposed of in the circuit court. In this case the complainants' title to the land in controversy was not admitted, but, on the contrary, it was alleged in the answer

296—39

that in building the new fence they had encroached upon the highway, and the issue was therefore the same as in *Commissioners of Highways* v. *Green, supra.* The testimony of the complainants sustained their bill, but the case was not one of which equity will take jurisdiction except for the inadequacy of the legal remedy or to prevent a multiplicity of suits. A general allegation is not sufficient to maintain the action, but such facts and circumstances must be alleged and proved as to show that an irreparable injury, for which the law affords no adequate redress, will result from the acts complained of. In *O'Donnell* v. *Gearing,* 291 Ill. 278, the rule that equity will not restrain a trespass but will leave the party to his legal remedy unless some condition exists which renders that remedy inadequate was again recognized, but was held not applicable to that case because the defendant had not answered the bill denying the complainants' title, but by his motion to dissolve the injunction and dismiss the bill admitted the complainants' title with the same effect as if it had been established in an action at law. Here there is no question of the inadequacy of the legal remedy. There is nothing peculiar about the situation of the complainants' land, which is a farm adjacent to the highway. The record discloses that a suit has been brought against the appellant for damages for the alleged trespass. In this case the parties will have a right to a trial by jury, and the judgment will settle the question of title and will be conclusive in all future actions. No circumstances are shown which would authorize a court of equity to take jurisdiction of the case until the title is so established.

It is assigned for error that the court refused to allow damages upon the suggestion of the appellant, consisting of his solicitors' fees upon the hearing on the motion to dissolve the temporary injunction. This error is well assigned. Where a temporary injunction is dissolved the defendant is entitled to suggest his damages and have them

assessed, whether the case has been disposed of upon the merits or not. *Shackleford* v. *Bennett,* 237 Ill. 523; *People* v. *Eisenberg,* 288 id. 304.

The decree will be reversed and the cause will be remanded, with directions to dismiss the bill and to assess appellant's damages upon the dissolution of the injunction.

*Reversed and remanded, with directions.*