Laurs B. Laursen, Plaintiff in Error, v. A. H. Memering & Company et al., Defendants in Error.

Gen. No. 8,249.

Heard in this court at the October term, 1930. Opinion filed March 17, 1931.

HALL & DUSHER, for plaintiff in error.

NORTH, LINSCOTT, GIBBONEY & NORTH, for defendants in error.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This suit was instituted on December 31, 1926, by Laurs B. Laursen, plaintiff in error, hereinafter referred to as complainant, in the circuit court of Winnebago county, against A. H. Memering & Company, a corporation, and Arthur H. Memering, Carmen Memering, Ezra M. Greenslit and Jane Greenslit, the four individuals who were incorporators of the said company, being the sole stockholders and directors, and are hereinafter called defendants. Arthur H. Memering was president of the corporation and Ezra M. Greenslit the secretary.

The original bill filed charged fraud, violation of the Illinois Securities Act, Cahill's St. ch. 32, ¶ 254 *et seq.,* and that the corporation was insolvent. To the original bill a demurrer was filed which was sustained. An amended bill was filed on October 10, 1929. The amended bill charged that the four individual defendants on October 9, 1925, filed a statement in the office of the secretary of state upon which statement the secretary on October 13, 1925, executed and delivered the charter which was duly recorded in the recorder's office of Winnebago county, Illinois; that in said

statement it was represented that the defendant A. H. Memering had subscribed for and paid into the corporation in cash $2,200; that the defendant Carmen Memering had subscribed for and paid in cash $100; that the defendant Ezra M. Greenslit had subscribed for and paid into the corporation $2,200; that the defendant Jane Greenslit had subscribed for and paid in cash $100; that said statement was sworn to by each of said defendants and that said statement was untrue in that defendants did not pay into the said corporation in cash the amount mentioned; that the corporation was in fact insolvent on May 1, 1926, when the defendants sold to the complainant $4,000 worth of stock of said corporation and was known by said defendants to be then insolvent. It is also charged in said amended bill that the defendants sold for and on behalf of the corporation to the complainant its stock of the par value of $4,000, and that he paid in cash to the corporation $4,000 for said stock; that said stock came within Class ''D'' under the Illinois Securities Act, Cahill's St. ch. 32, ¶ 256; that the corporation had not complied with the Blue Sky Law of Illinois and that the individual defendants were not persons who were qualified under said act to sell stock for the corporation; that the defendants attempted and offered for said corporation to sell said stock to the complainant and that they finally succeeded and sold him stock as aforesaid.

It was alleged in the said amended bill that the complainant relied upon the representations of the defendants and that he would not have purchased except for representations made by them. The bill prayed that upon a hearing the complainant recover of the defendants $4,000 with interest from the date of payment with solicitor's fees and that the court take charge of the corporation, appoint a receiver, wind up its affairs and restore to the complainant from the corporation

so far as the assets of the corporation were sufficient to do so the money paid by him. Furthermore the prayer of the said bill was for general relief.

The defendants answered the amended bill and denied so much of said amended bill as stated that the four individual defendants had not paid into said corporation the amounts stated in the charter and alleged that each of them had paid in that amount except Arthur H. Memering and that he had paid part in cash and part in property but that the property was equivalent to the balance of the money. They denied said corporation was insolvent and denied that the stock came within Class ''D'' of the Illinois Securities Act but represented that the stock was individually owned by the defendants and was sold by them as individuals; that the sale was not made in the course of successive and repeated transactions; was not sold through any broker; that no commission was paid and that the sale was a bona fide, single and isolated transaction.

The answer, while admitting the sworn statement filed with the secretary of state, stated that, so far as complainant's rights were concerned, it was immaterial to the issues in the case even if the statements herein were false, and that even though the corporation might have been insolvent at the time of the sale, it was immaterial to complainant's rights in this cause.

The case was heard upon the part of the complainant by the court. When the complainant rested his case the defendants moved the court to find for the defendants and to dismiss the bill for want of equity. The motion was sustained and allowed by the court and a decree ordered dismissing the bill for want of equity. The case comes here on writ of error for review.

The record discloses that Laursen, the complainant, was a blacksmith and tool maker, and skilled in tem-

pering steel; that A. H. Memering was also a skilled mechanic and had been foreman over the complainant in the plant of the Emmerson-Brantingham Company at Rockford. Ezra Greenslit was a bookkeeper. Memering and Greenslit with their respective wives organized the A. H. Memering and Company, a corporation. The husbands each subscribed and paid for $2,200 worth of stock in the corporation and their wives each subscribed and paid for $100 of stock. The total amount of stock subscribed and paid for was $4,600 which was the entire amount of stock then authorized to be issued, although the company could issue additional stock with the consent of the secretary of state. Complainant made a visit to the place where the corporation was doing business. He found there certain machinery for the manufacture of tools, dies, gigs, fixtures, automobile parts—a general manufacturing business—and all four of the incorporators were employed in and about the business. Subsequently at the invitation of A. H. Memering, complainant called at his home and he was asked why he did not go to work for the corporation. The complainant expressed his willingness and a desire to become interested in the business and the matter was discussed at Memering's home in the presence of his wife and on another occasion in the presence of Greenslit. A little later on Memering called for the complainant and took him to Beloit, Wisconsin, where the complainant owned a residence property. Memering had evidently made arrangements for a loan at one of the banks in Beloit. He took the complainant to the bank and negotiated a loan of $4,000 for the purpose of buying stock in the corporation. The loan was procured, a draft was made payable to A. H. Memering and Company, a corporation. It was received by that company and deposited to its credit in a bank in Rockford. The evidence shows that on the day of such deposit various

items of indebtedness of the company to the incorporators, who were the stockholders, were paid, together with other items of indebtedness aggregating more than $1,800. The greater part of the $4,000 was expended for the indebtedness of the corporation. The record shows that no stock was delivered to the complainant at the time he obtained the loan and caused the money to be paid to the company. Complainant among other things testified that they told him he was buying company stock and that as soon as they could hear from Springfield, meaning that as soon as they could get consent from the secretary of state to issue additional stock, it would be issued to him. He went to work in the factory and in a little more than a month and after he had several times inquired about his stock, Greenslit came to where complainant was working in the factory and tendered him two stock certificates, each for 20 shares. One of them had been issued to Ezra Greenslit and the other to A. H. Memering and both were indorsed by the holders for transfer. Greenslit at the time he tendered to the complainant the two stock certificates also had a paper which the complainant was requested to sign. This paper was a declaration of release from any liability under the Blue Sky Law. Complainant declined to accept the stock certificates and to sign the release. Greenslit told him if he would not sign the paper he could not have the stock. He laid the certificates and the release upon a table and left. When Greenslit had gone from where he had tendered the stock to the complainant, Memering appeared and told the complainant that he need not sign the release and could have the stock but the complainant replied that he wanted to take the papers and make inquiries about them. The record discloses that he went to a lawyer who advised him there was something wrong with the proposal and suggested that he see another lawyer in Rockford. Com-

plainant did as advised and refused the stock certificates.

The evidence clearly discloses that the complainant had no thought of buying out Memering and Greenslit. The entire transaction shows that the incorporators, being the individual defendants, knew the company was badly in need of money and in order to meet it they proposed to sell complainant $4,000 of treasury stock. Whether they made application to the secretary of state to issue additional stock does not appear from the record. It is very evident that there was no intention to sell the individual stock of Memering and Greenslit, otherwise the money would have been received by the stockholders and put to their credit in the bank and not to the credit of the corporation as was done. The record shows that the sale of the stock was not for the owner's account; it was for the account of the corporation. The evidence shows conclusively that the corporation and not the owners received the proceeds of the sale of the stock. Notwithstanding the fact that the corporation received the proceeds of the sale it is contended by the defendants that the stock contracted to be sold came within Class ''B'' and that it was an isolated sale by the owners. The statute provides (Cahill's St. ch. 32, ¶ 258) that the sale must have been for the owner's account to bring it within Class ''B.''

Section 3 of the Securities Act (Cahill's St. ch. 32, ¶ 256) classifies securities into four general divisions and are as follows:

''(1) Securities, the inherent qualities of which assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'A';

''(2) Securities, the inherent qualities of which, or in the nature of one or both parties to the sale thereof, assure their sale and disposition without the per-

petration of fraud, which shall be known as securities in Class 'B';

"(3) Securities based on established income, which shall be known as securities in Class 'C';

"(4) Securities based on prospective income, which shall be known as securities in Class 'D'."

Cahill's St. ch. 32, ¶ 261, provides: "All securities other than those falling within class 'A', 'B', and 'C'; respectively, shall be known as securities in Class 'D'." The only way therefore, to determine that a stock is in Class "D" is to eliminate Classes "A", "B", and "C".

The defendants evidently had been advised that they were violating the alleged Blue Sky Law in the sale of the stock in question. It will be remembered that the record discloses when Greenslit presented the certificates of stock to the complainant he also presented to him an instrument for him to sign which was to the effect that the stock sold to him was the separate and individual stock of Memering and Greenslit and was not treasury stock; that the complainant would waive all rights which he then had or might in the future have under the statutes of the State of Illinois, and particularly the Securities Act thereof, in so far as the same does or should give the undersigned (the complainant) any civil rights of action against Memering and Greenslit. These defendants fully recognized the fact that they had violated the Securities Act and undertook to have the complainant waive any right of action that he might have against them.

Furthermore, by section 34 of chapter 32, Cahill's St. ch. 32, ¶ 287, which is a part of the Illinois Securities Act, it is provided: "It shall be unlawful for any officer, director, . . . or for any issuer, knowing such issuer to be insolvent, to sell any securities issued by such issuer." It is quite evident from the evidence that at the time of the sale of the stock in

question to the complainant the corporation was insolvent.

On the day the deposit of $4,000 was made to the credit of the corporation, checks were drawn to three of the individual defendants, one to Jane Greenslit for $602.60, which was in payment of a note which the corporation owed her and part of the interest on the note. Another check was drawn on that day to Jane Greenslit for interest in the sum of $13.50; a check to Peoples Bank & Trust Company, to pay a note, $143.22; to A. H. Memering, a defendant, $324.60 to pay a note; a check to Greenslit for a note and interest $248; a check to Esley, who had a chattel mortgage on a part of the machinery, $530, a total of $1,862.02.

The corporation owned no real estate. It owned some machinery, tools and some equipment but of the three machines of any consequence owned by the corporation one was purchased under a conditional sales contract and the other two had chattel mortgages on them which were afterwards foreclosed and the machines taken under the foreclosure; the conditional sales contract was paid with the money paid by the complainant that was deposited to the credit of the corporation. The corporation had in the bank at the time of the sale only $42.46.

There is nothing in the record to show that the statute providing for the sale of Class "D" stocks had been complied with. Every sale and contract of sale made in violation of any of the provisions of the Illinois Securities Act shall be void at the election of the purchaser, and the seller of the securities so sold, officers and directors of the seller and each and every solicitor, agent or broker of or for such seller who shall have knowingly performed any act, or in any way furthered such sale, shall be jointly and severally liable in the action at law or in equity upon the tender to the seller or in court of the securities sold to the purchaser for the amount paid, the consideration given, or the

value thereof, together with his reasonable attorney's fees in any action brought for such recovery. Cahill's St. ch. 32, ¶ 290.

The record discloses that on the hearing and in open court the complainant tendered the two certificates of stock in question. In determining whether or not the transaction was a sale or agreement to sell and of what stock, all the documents bearing upon it, together with the whole transaction, must be construed together. It is not necessary that the contract or agreement be in writing. It may be in writing on one side and acted upon by the other side. It is sufficient if, taking the whole transaction into consideration, it can be seen that it was a sale or an offer to sell which was so far consummated that the purchaser paid his money. *Dobal v. Guardian Finance Corp.*, 251 Ill. App. 220–224.

We have already seen that at the close of the testimony on the part of the complainant the defendants made a motion for a directed verdict, which motion was sustained, and the bill was dismissed for want of equity.

"The courts do not recognize a practice of making a motion in a case on final hearing before a chancellor to dismiss the bill on the evidence submitted at any stage of the case. . . . A party has a right to submit his cause to the chancellor upon the evidence adduced, if he sees fit, and the motion at the close of complainant's case, if made, was neither more nor less than a submission of the cause to the chancellor." *Koebel v. Doyle*, 256 Ill. 610–614; *Abel v. Flesher*, 296 Ill. 604–605; *Thorworth v. Scheets*, 269 Ill. 573–576.

Where a motion is made by the defendant at the close of complainant's case to find a decree for the defendants, it amounts to a submission of the cause, and upon appeal, if the reviewing court decides that the evidence then in the record was sufficient to justify a recovery by the complainant, the court will reverse

the decree and remand the cause with directions to enter a decree for the complainant. Cases will not be tried piecemeal. *Koebel v. Doyle,* 256 Ill. 610, 614–616; *Thorworth v. Scheets,* 269 Ill. 573, 576–584.

The evidence shows that $500 was a reasonable solicitor's fee for the services performed by the solicitors for the complainant in the circuit court. There is nothing before us to base the finding for solicitor's fees for services in this court. We are of the opinion the complainant is entitled to the relief prayed for.

We conclude, therefore, that the decree of the circuit court of Winnebago county should be reversed and the cause remanded with directions to enter a decree for the complainant and against the defendants for the sum of $4,000 and costs of suit and for an additional sum of $500 solicitor's fees for the solicitors of complainant.

*Reversed and remanded with directions.*