E. R. Johnson, Appellee, v. Virginia Johnson, Appellant.

Gen. No. 9,714.

Opinion filed January 27, 1942. Rehearing denied February 27, 1942.

WILLIAM D. KNIGHT, of Rockford, for appellant.

HALL & DUSHER, of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This cause is here by appeal from a decree of the circuit court of Winnebago county granting appellee a divorce from appellant on the ground of desertion.

Appellee was born and raised at Rockford in Winnebago county. From there he entered the United States Naval Academy at Annapolis in 1914, and has been in the navy ever since his graduation, now holding the rank of Commander. His duties required him to move from place to place over a considerable part of the world. His first assignment was to the battle ship Nebraska with the fleet based in the York River about 35 miles from Hampton, Virginia. He and appellant were married in June 1918, at Hampton, where appellant lived with her parents. She has lived there ever since, with the exception of three short periods hereinafter mentioned. The parties have a son, born in 1924, and a daughter, born in 1930. The custody of the children is not involved in this suit.

The first ground urged for reversal is that the court was without jurisdiction because appellant did not es-

tablish that he was a bona fide resident of Winnebago county at the time of instituting and during the pendency of this suit. He was unquestionably a resident of that county when he entered the naval service. The only times when he and appellant maintained a semblance of housekeeping were: First, from September 1919, to February 1920, when they lived in a one-room apartment house in Philadelphia while his ship was in the navy yard there; second, at Annapolis from the autumn of 1923 to June 1924, where they lived in an apartment while he took postgraduate work at the Naval Academy; and third, at Norfolk, Virginia, where they bought some furniture and rented an apartment from May 1929, until May 1930, while he was assigned to shore duty at the Norfolk navy yard, after which the furniture was moved to the home of appellant's parents at Hampton. At all other times appellee was either on shipboard or shore duty, living alone. On shore duty in San Francisco he lived in an apartment. In Washington, D. C. he stayed at the University Club, and since 1940 has been on duty as a student at the Naval War College. The fact that he has a bank account in Annapolis, Maryland, none in Rockford, Illinois, has no charge account in any Rockford store, has never asked appellant to live with him in Illinois and never voted in Illinois since his marriage are not sufficient to overcome or discredit his positive testimony that Rockford has always been his legal residence and he has always claimed it as such. None of the facts in evidence tend to show he ever intended to abandon his residence at Rockford, or to set up a permanent residence or abode elsewhere.

The place of residence of a party is a matter of intention, and when the residence is once established, it is not lost by a temporary departure from that place, but remains his residence until he has acquired another residence, which does not mean merely a temporary abode. (*Tobias v. Tobias,* 208 Ill. App. 539.) The

same is true of a domicile. (*Miller v. Brinton,* 294 Ill. 177; *Hayes v. Hayes,* 74 Ill. 312.)

Section 4 of article 7 of the Constitution of this State provides: "No elector shall be deemed to have lost his residence in this State by reason of his absence on business of the United States, or of this State, or in the military or naval service of the United States." Conversely, section 5 of the same article provides: "No soldier, seaman or marine in the army or navy of the United States shall be deemed a resident of this State in consequence of being stationed therein." These provisions cover the entire field of change of residence, so far as Illinois is concerned, by one in the naval service of the United States. A case squarely in point is *Knowlton v. Knowlton,* 155 Ill. 158, where it is held that the residence of one's origin is not lost, for the purpose of a petition for divorce, by reason of duties outside this State, in the naval service, even though during part of the time the petitioner kept house with his wife in another State.

Over objection that it was not the best evidence, appellee was permitted to testify that every six months he is required to make a report to the navy department stating his place of residence, in which he has always stated it to be at Rockford, Illinois. No harm to appellent was occasioned by this testimony. There was ample evidence to sustain the finding of residence without this. The claim as to want of jurisdiction is without merit.

On the merits of the charge of desertion the testimony shows that at the time of the marriage and for about one year afterward, appellee was doing duty on an Italian transport ship, visiting appellant at her parents' home when his ship was in port. Then came the sojournment at Philadelphia already mentioned, until February 1920, after which, until June 1921, he was on a destroyer in the Eastern Mediterranean Sea near Constantinople. He was then transferred to the

Asiatic fleet and spent five months in Philippine waters, from whence he was assigned to the U. S. S. Albany, based at Vladivostok until February 1922. He then returned to Manila and was sent on other naval vessels to South China rivers and to Hongkong until May 1923, when he was ordered to return to the United States, and arrived in San Francisco on August 1st. He stopped a short time in Rockford on his way back to the Naval Academy, where he took post graduate work until June 1924, during which time appellant was with him as before mentioned. He testified they were expecting the birth of their first child, and as he was going to New York to take further post graduate work, she said she would rather stay at home until the baby was born, and accordingly went to her parents at Hampton. He was in New York until June 1925. Averaging once a month, he visited her on week ends. Thereafter, for about three months he was at two large plants which manufacture electrical apparatus and then went to Hampton. From there they drove to Rockford where they spent about three weeks with his mother. He was then assigned to duty with the Atlantic fleet operating between Long Island Sound and Cuba for three years, at the conclusion of which the parties and their son again visited his mother at Rockford for one month. In October 1928, he was sent to the Navy Yard in Norfolk for shore duty, where the parties lived together as before stated. He testified that while there she expressed a desire to stay in Rockford for a year, to which he objected, as he wanted her to live with him in Norfolk, and the day before he was to leave Rockford, she said she wanted to return to Hampton, and they went back there; that she refused to go to Norfolk to live, and insisted upon staying with her parents at Hampton, and he visited her there on week ends for about six months. That he finally told her he would not be coming there any more, and on the following week end left the automobile and

keys at her house and returned to Norfolk; that she called him the next day by telephone and said she had changed her mind and would come to Norfolk, which she did; that on more than one occasion while they lived there she told him she considered herself merely his servant, although he stated that he always treated her with respect and consideration and told her that he knew of nothing he did to cause her to think that way. In May 1930, he was ordered to duty with the Pacific fleet, based at Long Beach, California. The household goods were sent to her parents' home and he visited her there until he left for California shortly before the second child was born in July of that year. He testified she promised to come to him in California. He lived aboard a ship for three years and one month, and was then transferred to San Francisco, where he lived in an apartment for one year and ten and one-half months. He was then again assigned to sea duty which occupied the next three years and two months. He was then sent to Washington, D. C. in 1938, where he lived at the University Club. At the time of the trial he was on duty as a student at the Naval War College, where he went in 1940.

He testified he had not lived and cohabited with appellant since June 1930; that in July 1931, he wrote appellant asking her to come to California and make a home for him according to her promise, and offered to arrange transportation for the family and the household goods on an army or navy transport, with accommodations comparable to a first-class ocean liner; that he did not hear from her for three months, and then received a letter to the effect that she did not care to come, assigning as reasons, that the doctor told her the second year of a child's life was very important; that she was afraid the child might get sick away from her father's home; that she was afraid to travel with the children and to stay at home in Long Beach on any night when appellee might be away; that

her father and mother were getting old and they might get sick while she was away, and she wanted to stay at home and take care of them. Appellee further testified that he replied, again reminding her of her promise, and that he could not compel her to come but would be very happy to have her do so; that she did not answer the letter for a month, and when she did, she said nothing on the subject; and that thereafter he did not hear from her until January 1934; that he had written her in June 1933, of his transfer to shore duty at San Francisco, giving her his address, but did not hear from her until January 1934, when she wrote him that she and the two children, with her two sisters would like to visit him for two weeks; that he replied, declining the visit, and said he would be delighted to have her come and live with him permanently in their home, but under no other conditions; that a visit was not satisfactory and he wanted her to join him as he thought a wife should join a husband; and that he received no reply to that request.

A number of occurrences in 1938 and afterwards are stressed by appellant, particularly a letter from appellee to appellant dated October 10, 1939, not admitted in evidence, stating their present situation for many years had been unsatisfactory to him and had become intolerable, and requesting her to procure a divorce. Other incidents are his telling a telephone operator he did not desire to receive calls from Hampton, and a conference between the parties and their counsel at which he did not mention desertion. These matters are beside the mark. The statutory period had expired after his first request for her to live with him, made in July 1931, and the second like request made in January 1934. He was not obliged to keep the door open for her after the expiration of the statutory period. (*Albee v. Albee,* 141 Ill. 550; *Silverstein v. Silverstein,* 178 Ill. App. 145; *Garvy v. Garvy,* 282 Ill. App. 485.) Ever since their marriage,

up to the time of the hearing, he has provided an allotment for her out of his pay, increasing it as his pay increased, and it was his habit to send the family his December check for a Christmas present. These facts do not affect the question of her desertion. (*Elzas v. Elzas,* 171 Ill. 632.) In our opinion, the testimony shows a desire on the part of appellant, without any reasonable cause, to live apart from appellee, increasing from a desire to an intention to do so, from the time they left Annapolis, culminating in complete desertion in July 1931. The testimony sufficiently supports the decree.

During the hearing of the testimony for appellee, appellant was called as an adverse witness and identified four letters she received from him. None of them bore upon the facts to which he testified concerning her refusal to live with him. He did not offer them in evidence. She testified she had received other letters from him but had thrown them away. Under such circumstances there was no error in permitting appellee to testify to the contents of such other letters.

At the close of the testimony for appellee, appellant's counsel made a motion to dismiss the complaint for the reason that the proof did not establish desertion and argued the motion. After some observations by the court, the motion was denied. Thereupon, appellee's counsel offered her as a witness. Upon objection by appellant, and extensive argument, the motion was denied, as was also the admission in evidence of the letters identified by appellant, on the ground that her motion to dismiss amounted to submitting the cause to the court. Her counsel offered to withdraw the motion, and the offer was denied. It has been repeatedly held that such motions are unknown to chancery practice and amount to a submission of the cause to the chancellor. (*Koebel v. Doyle,* 256 Ill. 610; *Abel v. Flesher,* 296 Ill. 604; *Laursen v. A. H. Memering & Co.,* 260 Ill. App. 515.) In *Koebel*

*v. Doyle, supra,* the reason for the rule is stated to be that to permit such a motion would result in hearing a case piecemeal, the sustaining of a motion resulting in an appeal, and on reversal another hearing on more evidence, followed, perhaps, by another appeal. In *Fewkes v. Borah,* 376 Ill. 596, the court said: ''The cause was on hearing before the chancellor and a motion at the close of plaintiff's evidence is a submission of the case on its merits. If the motion is allowed and not sustained on review the proper judgment on review is to reverse the decree entered and direct a decree in accordance with the prayer of the complaint.'' We are not unmindful of the fact that subparagraph 4 of section 64 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.064], as amended July 21, 1941, provides for such a motion in a proceeding in equity, and that if the motion is denied, the defendant may adduce evidence in support of his defense, but the amending act did not take effect until January 1, 1942, and is not available to appellant. The action of the chancellor in refusing to permit appellant to testify and in denying admission in evidence of the letters identified by her, and in refusing to permit the withdrawal of the motion after it had been argued and passed upon was, therefore, not error.

Certain remarks of the chancellor during the trial are criticized as indicating appellant and her counsel did not receive the consideration to which they were entitled. The remarks of the chancellor indicate that he thought his ability to understand the particular question being argued was being disparaged and while couched in words not to be commended were not such as require a reversal of this decree, and it is, therefore, affirmed.

*Decree affirmed.*