## PHILLIPS ET UX. v. PHILLIPS ET AL.

[No. 8, September Term, 1957.]

*Decided November 2, 1957.*

*Concurring opinion of* BRUNE, C. J., *filed December 13, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*John A. Meyer*, for appellants.

*Arnold Fleischmann*, with whom were *Smalkin, Hessian, Martin & Taylor, Paul Martin* and *A. Frederick Taylor* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellants filed a bill of complaint in the Circuit Court for Baltimore County, to enjoin the obstruction by the appellees of a driveway on the adjoining land of the appellees, the use of which the appellants claimed by prescription. The respondents filed an answer denying the claim and alleging that the use made of the driveway was permissive and not adverse. The case came on for hearing and at the conclusion of the complainants' case the respondents offered a prayer for a directed verdict, which the court granted. From a decree dismissing the bill the case comes here.

The evidence produced by the complainants is virtually undisputed. The appellant, Theodore Phillips, is the son of the appellee, Mrs. Margaret Phillips, and the brother of the appellee, Vernon Phillips. Prior to 1935, Mrs. Phillips and her husband, since deceased, owned a tract of land on Dreher Avenue improved by a dwelling where they resided. Theodore was married in 1931, and on July 31, 1935, Mrs. Phillips and her husband conveyed a lot No. 20, which was carved out of the tract, to Theodore and his wife. In the survey prepared, lot 20 had a frontage on Dreher Avenue of 72 feet and a depth of 200 feet, leaving a frontage of 144 feet for lot 18, where the homestead was located. Subsequently, in 1941, lot 18 was conveyed to Mrs. Phillips and her son Vernon as joint tenants. There was an existing driveway from Dreher Avenue prior to 1935, on what became lot 18, near but not on the dividing line. Theodore constructed a house and separate two-car garage on lot 20, and moved in about November

32

24, 1935. He has used the driveway ever since as a means of access to his garage, and for about fifteen years used it to transport building materials used in his business, and to store them, contrary to the wishes of his mother and brother, on the vacant land behind his lot. Until July, 1955, when he erected a new garage, he used the driveway daily. Since that date he has used it for hauling dog food to the garage, for the passage of a small tractor stored in the garage, and for the servicing of a bottled gas tank. The Chancellor found that the use was open and notorious, continuous and uninterrupted, for more than twenty years. He found, however, that the use had not been adverse or under a claim of right.

On this point Theodore testified that at or about the time of the conveyance of lot 20 in 1935, and before construction of the house and garage had begun, he discussed the location of the garage with his mother and father. She suggested that he face it towards the existing driveway, to save the expense of a new driveway. He said, "Well, maybe sometime you might sell the property and that driveway would be closed to me." She said, "Aw fiddlesticks, you know better than that. I'll never leave here until they carry me off the place. You can use that driveway and you can always use it and nobody will ever stop you from using it, so you go ahead and build your garage there." He testified, "that's what I did, taking the driveway." He also fenced in a triangular strip between the driveway and the boundary line, but no claim is asserted to this strip. He paved the driveway and has maintained it at his own expense ever since 1935. On December 19, 1955, he received a letter from his mother directing him to vacate the driveway and remove the fence before January 15, 1956. She said: "As you know your side fence is on the property which some day will be Vernon's at my death, and you are using the driveway belonging to this place. * * * I am going to fence this part of the place in so there will be no misunderstanding when I am gone." Neither she nor Vernon had ever before objected to his use of the driveway.

The general rule set out in the *Restatement, Property,* § 458, is that a use, claimed as an easement by prescription,

must be adverse and not "made in subordination to" the owner of the fee. In *Condry v. Laurie,* 184 Md. 317, 319, where the deed contained a "license to use the private road * * * while they [the grantors] shall remain owners of the property", it was held that the presumption arising from twenty years' use was rebutted. It is generally held that a permissive use can never ripen into an easement by prescription, at least during the period within which permission is granted, but this rule does not apply where there has been an attempt to grant an easement which is void because of the Statute of Frauds. See 17A *Am. Jur., Easements,* § 86, p. 702, and Note 13 *L. R. A.* (N. S.) 991. In such cases the question whether an oral grant is intended to convey an irrevocable right or a mere license is one of fact. Cf. *Clark v. Henckel,* 26 A. 1039 (Md.). See also Note 27 *A. L. R.* 2d 332, 355. In *Tiffany, Real Property* (3d ed.), Sec. 1196, p. 562, it is said: "When the owner undertakes to confer upon another a perpetual right of user in the land, but fails to do so in a valid manner, as when he makes an oral grant of an easement, the user of the land by such other in accordance with the terms of the invalid grant cannot be regarded as permissive and in subordination to the rights of the landowner, but is in effect adverse to such rights." This statement was cited with approval in *Lichtenberg v. Sachs,* 200 Md. 145, 154, where it was said: "If they [the claimants] got any permission to use the Robinson property, they probably thought it was irrevocable. An oral permission, believed to be irrevocable but unenforceable by reason of the Statute of Frauds, may evidence a claim of right and indicate that user was adverse and not permissive."

Under the facts of the instant case, we think the Chancellor was clearly wrong in finding that the use was not adverse and under a claim of right. The mother's statement seems clearly to have imported that his use would never be interfered with by her or anyone else, even if the property were sold. The fact that he built the garage so that it faced the driveway, and paved and maintained the driveway thereafter, seems inconsistent with a belief on his part that the permission could be withdrawn at any time. The Chancellor

attempted to distinguish *Lichtenberg v. Sachs, supra,* on the ground that there was no family relationship between the parties. But that is only one of the facts to be considered, and is not controlling. *Dalton v. Real Estate & Imp'v't Co., 201 Md. 34, 45.* In the instant case the fact of relationship, in connection with the clear intention to confer some privilege, would support an inference that a permanent grant was intended, rather than a mere license. If the mother had believed the grant to be revocable, it seems strange that she should not have raised the point when she caused lot 18 to be conveyed to herself and her son, Vernon, in 1941. There is no evidence that she or her son, Vernon, ever made any objection to the use until after the lapse of twenty years. Finding that there was an intention to grant an easement, it is unnecessary to consider the argument of the appellants that a grant could be implied, under the circumstances, from the conveyance of lot 20. Cf. *Dalton v. Real Estate & Imp'v't Co., supra.*

Since the case must be reversed, the question arises as to whether we should direct the entry of a final decree. The Chancellor stated that he was deciding the case only on the basis of the evidence presented by the complainants, in view of the prayer for a directed verdict at the conclusion of the complainants' case. The filing of such a prayer is not proper in an equity proceeding, and even if it be treated as a motion to dismiss, it is generally held that the filing of such a motion is not the proper practice in equity, in the absence of statute or rule of court to the contrary. See *Kiss v. Gale,* 47 S. E. 2d 353 (Va.); *Kelley v. Mallory,* 277 P. 2d 767 (Ore.); *Humphreys v. Humphreys,* 281 S. W. 2d 270 (Tenn. App.); *Sundlun v. Volpe,* 2 A. 2d 875 (R. I.); *Pearce v. Tharpe,* 79 So. 69 (Miss.); *Garner v. Garner,* 52 S. E. 194 (S. C.); 30 *C. J. S.* § 579, p. 972; 19 *Am. Jur.,* p. 217; Ann. Cases 1913A, 283. The rule was recognized in *Koebel v. Doyle,* 100 N. E. 154 (Ill.), but subsequently changed by statute. See *Johnson v. Johnson,* 39 N. E. 2d 389, 393 (Ill. App.). It was recognized in *Kelley v. Northern Ohio Co.,* 196 S. W. 2d 235 (Ark.), but subsequently changed by statute. See

*Werbe v. Holt,* 229 S. W. 2d 225 (Ark.). It was changed by rule of court in New Jersey. *Ucci v. Ucci,* 69 A. 2d 891 (N. J. Super.). The practice in the federal courts was also changed by rule of court. See *Bach v. Friden Calculating Mach. Co.,* 148 F. 2d 407 (C. C. A. 6th). Under the recognized equity practice, a respondent may, of course, decline to submit evidence and submit the case for final determination, but he cannot move to dismiss and then go on with his evidence if the court rules against him. The Chancellor passes upon the whole case as submitted. The inquiry is simply whether the facts justify the relief prayed in the bill, applying the proper principles of law to the facts so established. It is unnecessary that any motions be filed, since objections thereto on the facts and the law are implicit in the submission for final decree.

We have found no Maryland case that has expressly passed on the point.

It was said in *Loeber v. Schroeder,* 76 Md. 347, 351, that where the respondent did not avail himself "of the opportunity to produce countervailing proof, which he now says he could have produced, to disprove the case made by the appellee", but stood upon his contention that the appellee had no interest in the subject matter, the appellate court might properly "dispose of the case upon the testimony before us." But in *General Ins. Co. v. U. S. Ins. Co.,* 10 Md. 517, 528, it was noted that under Chapter 312, Acts of 1832 (Code (1951), Art. 5, Sec. 42; cf. Rule 871 a of the New Maryland Rules), this Court may remand for further proceedings "and, in such cases, we sometimes do more than the court below could have done of its own motion, because when a cause is submitted for final decree, generally, it must be decided on the case as then presented." In *Tribull v. Tribull,* 208 Md. 490, the Chancellor granted what was in effect a motion to dismiss, at the conclusion of the complainant's testimony, holding that the complainant had no standing to sue under the allegations of the bill. We found otherwise on the point of law, and because of the paucity of the record on the point of an alleged confidential relationship, we remanded for fur-

ther proceedings without affirming or reversing, with leave to make amendments to the pleadings. The propriety of the motion to dismiss was not considered. In *Wardrop v. Wardrop,* 211 Md. 14, 17, we said that it lies within the discretion of the Chancellor whether a motion to dismiss a bill at the conclusion of the complainant's case should be granted, but the propriety of the motion was not discussed.

We think it is significant that under the new Maryland Rules applicable to non-jury cases, it is expressly provided that a defendant may move to dismiss at the conclusion of the plaintiff's case without waiving his right to offer evidence in the event the motion is not granted (Rules 565 and 741), but there is no similar provision in the rules applicable to trials in equity. Rule 1 d expressly provides that "these Rules shall not be interpreted to affect the existing distinction between law and equity." While in other respects the equity practice has been adopted in non-jury cases at law (see the Reporter's Notes in Code (1947 Supp.), p. 2086, *et seq.*), it would appear that the rules cited preserve a feature of the law practice in non-jury cases. In any event, we find nothing in the rules to support a contention that the Equity practice has been altered in trials in equity. Doubtless, there are arguments that might be advanced in support of each rule. It may be argued that the non-jury practice has the virtue of enabling a defendant to dispense with his proof, where a *prima facie* case is not made out, with a consequent saving of his time and that of the trial judge. On the other hand, as pointed out in some of the cases cited, the equity practice has the virtue of avoiding a piecemeal determination of the cause, assuring a final determination on the merits, and obviating the necessity of a second appeal in some cases. But regardless of the virtues of the several rules, we think it is clear under the authorities that the equity practice is as we have stated it, and that the practice remains unaltered by the existing rules.

Because of the fact that the appellees were not required to submit the case for final determination, we are constrained to exercise our discretion to remand the case for the taking

of further testimony, under Rule 871 a, *supra.* Cf. *Tribull v. Tribull, supra,* and *Sundlun v. Volpe, supra.*

> *Case remanded without affirming or reversing the decree, for further proceedings not inconsistent with this opinion; with costs of this appeal to the appellants.*

BRUNE, C. J., filed the following concurring opinion.

I concur in the result in this case, but disagree with the view of the majority as to the effect which should be given to a motion to dismiss (or the equivalent of such a motion) submitted at the conclusion of the plaintiff's case. The opinion of the Court states that no Maryland case has been found which expressly passed upon the point, and I agree. However, motions similar to that in the instant case have been involved in two recent decisions of this Court, *Tribull v. Tribull,* 208 Md. 490, 119 A. 2d 399; and *Wardrop v. Wardrop,* 211 Md. 14, 124 A. 2d 576. It is true that the propriety of making such a motion was not challenged in either of those cases; but, I may add, it was not challenged by either party in the instant case. Since I happen to have written each of the opinions just referred to, it may not be amiss to confess that the impropriety of such motions now announced by the majority did not occur to me at the time of the preparation of those opinions.

In the *Wardrop* case, the propriety of offering a motion to dismiss at the conclusion of the complainant's case seems to me to be implicit in the express holding that it was within the discretion of the Chancellor to grant or deny such a motion. There have been several other cases in this Court recently in which motions similar to that in the present case have been made, and no question as to the propriety of their being offered (as distinguished from the obvious impropriety of what some of them have been called—"a motion for a directed verdict") has been raised. What has been the recent seem-

ing growth of their use, and their tacit or express acceptance in the *Tribull* and *Wardrop* cases, suggest to me that our actual practice in equity has progressed beyond the rigidity of the rule adopted by the majority opinion. To me, this is at least as significant as the fact that Rule 565 of the present Maryland Rules (entitled "Demurrer to the Evidence") is applicable only to law cases or that Rule 741 b of those Rules applies only to criminal cases.

It seems to me, despite expressions to the contrary in some of the cases cited in the majority opinion, that the rule now announced is a product of the ancient practice of submitting equity cases on written, not oral, testimony. An interesting historical account of the development of the taking of testimony both in England and in Maryland will be found in Chancellor Bland's opinion in *Winder v. Diffenderffer,* 2 Bland 166, at 184-191 (1829). Complete secrecy veiled the taking of the answers of witnesses to the interrogatories propounded to them under the English practice until the commissions were returned to court. When all of them had been returned an order would be entered for their publication— i. e., "that they be opened, read, and copies taken by all concerned, if required." Chancellor Bland added (p. 186): "The examinations being thus brought to a conclusion and made public, no further testimony can be taken in relation to the matter in issue between the parties; unless under very special circumstances." Such secrecy did not prevail in Maryland after the passage of Chapter 72, Section 15, of the Acts of 1785, under which the parties and their solicitors were permitted to be present at the taking of testimony. As Chancellor Bland points out, the examination and cross-examination of witnesses proceeded in the same manner as in a court of law, *"except that it is all in writing."* (Emphasis supplied.) See also *Phelps, Juridical Equity* (Abridged Ed., 1894), § 70, which indicates that the practice was much the same in 1894 as it had been in 1829. See also *Miller, Equity Procedure,* §§ 213, 223.

It was not until 1896 that general provision was made by Chapter 35 of the Acts of that year for taking the testimony

of witnesses in open court upon demand of any party or upon the court's own motion. *Miller, op. cit.,* § 223.[1]

---

1. Briefly, the development of equity rules and of statutes relating to this matter was as follows:

In 1883 this Court first promulgated its General Equity Rules. Rule 45 (later included in the Code of 1888 as Sec. 225 of Art. 16) permitted the examination of witnesses in the Circuit Court of Baltimore City, by agreement of the parties and with the concurrence of the court, "orally in court, in the presence of the judge thereof". It further provided that the evidence so taken should be written down in such manner as the court might direct and that it be filed in the case "to be used as if taken before an examiner". By Chapter 86 of the Acts of 1890, this method of taking testimony of the witnesses, or of any of them, was made available in equity courts generally "if the court in the exercise of its sound discretion to serve the ends of justice shall so order on application of a party, or [on] its [own] motion". By Chapter 35 of the Acts of 1896, oral examination of the witnesses, or any of them, in open court might still be ordered by the court of its own motion, but was made mandatory upon application of a party in interest. Testimony so taken was still required to be filed and used as if taken before an examiner.

By Chapter 377 of the Acts of 1914, it was provided that testimony taken in open court in equity cases be taken "in the same manner and under the same rules as testimony is now taken in actions at law"; and the provisions with regard to writing down the oral testimony and filing and using it as if taken before an examiner were changed to read: "and when so written down shall, with such documentary proof as shall have been with it offered and admitted, be filed as a part of the proceedings". The Section amended by this Act of 1914 was Sec. 261 of Article 16 of the 1911 Code. A new section, 261-A, was added by this same Act, which provided for proffers of proof if objections to evidence were sustained, so that the rulings thereon could be reviewed on appeal.

These Sections continued without change into the 1951 Edition of the Code as Secs. 320 and 321 of Article 16, except that a proviso was added by Chapter 197 of the Acts of 1937 to the earlier Section dispensing with the need of transcribing testimony taken down in shorthand if no appeal was taken. These Sections were superseded by Rule 581 of the Maryland Rules and were repealed by Chapter 399 of the Acts of 1957. They were not altered in substance when incorporated in Rule 581.

The 1937 proviso emphasized (though I think it certainly did not originate) the complete and final breaking away in cases where

Some search of works on equity practice when all testimony was submitted in written form has failed to reveal any mention of a motion to dismiss the bill at the conclusion of the complainant's case. It seems to me, however, that the fact that such a motion was probably unknown under the old equity method of taking testimony does not require the conclusion that it is therefore improper under the comparatively recent and frequently used method of taking testimony orally in open court.

Even under the old equity practice, which generally barred the production of additional testimony after a case had been set down for hearing, absolute rigidity did not prevail and the Chancellor, in his discretion, might allow defects of proof to be supplied in some circumstances. *Miller, op. cit.,* § 218; *Salmon v. Clagett,* 3 Bland 125, 167; *Worthington v. Hiss,* 70 Md. 172, 16 A. 534, 17 A. 1026. In the latter case Judge Miller, speaking for the Court, said (70 Md. at 188): "In fact we think it the plain duty of a Court of equity to allow further proof to come in at any time during the progress of a cause when, in its judgment, the taking of such proof will subserve the ends of justice."

The cases cited by the majority in support of the rule now announced are all of comparatively recent origin. Among them is *Bach v. Friden Calculating Machine Co.,* 148 F. 2d 407 (C. C. A., 6th). In applying Rule 41(b) of the Federal Rules of Civil Procedure (even prior to the 1948 amendment thereof), the Court expressed what I believe to be the general modern trend of thought on such matters in saying (at p. 410): "When it is remembered that the purpose of the

---

the testimony was submitted orally in open court from the old practice of requiring all evidence in equity cases to be in writing.

It is hardly necessary to refer to the well established rule under which great weight is accorded on appeal to the findings of fact of the Chancellor based upon the evidence and due regard is given to his opportunity to see and hear the witnesses and to judge their credibility. The difference in this respect between cases where testimony was taken before an examiner and where it was taken before the court has been commented upon by this court more than once.

Rules of Practice is to expedite the trial of cases, it would seem that the trial court should be able to dispose of cases at the earliest opportunity and to this end, that it should have the power to weigh the evidence and consider the law at the end of plaintiff's case in jury-waived actions or in equitable proceedings." [2]

The argument that because a court of equity is a court of conscience, the Chancellor should hear both sides before deciding the case is of little force or applicability in a situation of this sort, as I see the matter. It would, I think, be a strange manifestation of conscience to require a defendant to meet and disprove a case which the Chancellor, after a full hearing of the plaintiff's side of the matter, considered to be groundless or ill founded. The rule adopted by the majority requires the defendant to do just that, unless he is willing to gamble (a) that the Chancellor is ready to find in his favor and (b) that this Court will either sustain the Chancellor's conclusion or at least will not upset it without affording the defendant an opportunity to adduce his evidence.

It is true that this Court does have power to remand a case, without affirming or reversing the decree, and to direct that further testimony be received. It seems to me, however, to reverse the normal course of the judicial process to deprive the trial court of the power to exercise judicial discretion as to whether or not the defendant should be required or permitted to go forward with his proof, and to insist that the exercise of such discretionary power be placed solely in the hands of the appellate court. In saying this I have not over-

---

2. It would serve no useful purpose to review some differences of opinion in the Federal courts prior to 1948 as to whether or not the analogy of jury cases should be carried over into cases where the judge was the trier of facts, so that he should not grant a motion to dismiss made at the conclusion of the plaintiff's case if there was enough evidence to have taken the case to the jury, if there had been one. The 1948 revision of the Federal Rules of Civil Procedure adopted the view that the judge, as the trier of the facts, could dispose of the case, on motion, at the conclusion of the plaintiff's evidence, if he thought that the plaintiff had failed to meet the burden of proof.

looked *General Ins. Co. v. U. S. Ins. Co.,* 10 Md. 517, and Judge Tuck's statement therein, which is quoted by the majority, as to the power of the Court of Appeals under Ch. 312 of the Acts of 1832 (now incorporated in Rule 871 a of the Maryland Rules) to do more than the trial court could have done, by remanding a case for further proceedings, despite its having been submitted to the trial court for final decree. It may be noted that in that case there had been a clear submission of the case (more than twenty years after it had been instituted) and that the power to remand was not exercised. One reason for its non-exercise was that the appellant failed to show that the ends of justice required such a remand.

Although most of the cases which have considered the question support the majority view, not one of those decisions is binding upon this Court. I am in agreement with the views expressed in a concurring opinion by Justice Woods of the Supreme Court of South Carolina in *Garner v. Garner,* 52 S. E. 194, and with the views of the court in *Powell v. Canaday,* 95 Mo. App. 713, 69 S. W. 686. Justice Woods said in part: "I do not assent * * * to the view * * * that the circuit judge should never dismiss an equity cause upon hearing the evidence of the plaintiff, however conclusively it may show he is not entitled to recover. The authorities cited in the majority opinion fully establish that where an issue of fact is referred to a jury a nonsuit cannot be granted. * * * But on the trial of an issue from an equity cause submitted to a jury the practice of directing a verdict for defendant when it is plain the plaintiff has not established his case is sustained in *Brock v. Nelson,* 29 S. C. 49, 6 S. E. 899, and *Gilreath v. Furman,* 57 S. C. 289, 35 S. E. 516. It follows inevitably that where the circuit judge is trying the cause on evidence taken in open court, or by a master or referee under the order of the court, and it appears clearly from the plaintiff's own showing that in no view of the facts could there be a decree in his favor, the circuit judge may dismiss the complaint without consuming the time and labor necessary to take the evidence on the part of the defendant." (52 S. E. 195.)

In *Powell v. Canaday, supra,* the Appellate Court (not the Supreme Court) said: "Although a demurrer to the evidence is not strictly applicable to a proceeding in equity, it may be treated as a practical mode of arriving at the view of the trial judge in a proceeding of this kind. At the close of plaintiff's testimony, the learned judge announced as his opinion that plaintiff had no case in equity. We see no reason why he might not so declare, and thereby save public time, and the annoyance of unnecessary proceedings. This the learned trial judge did. There was no substantial error in his procedure in so doing." (69 S. W. 686.)

In summary, the rule announced by the majority seems to me not to be required by any authority binding upon this Court to be inconsistent with our own recent actions in the *Tribull* case and (even more so) in the *Wardrop* case and to run directly counter to modern efforts to reduce the time, effort and expense of litigation. I hope that this matter may receive the early consideration of the Rules Committee.