904 A.2d 448

**R. Alan BANKS, Jr., et ux.**

v.

**Ira R. PUSEY.**

No. 135, Sept. Term, 2005.

Court of Appeals of Maryland.

Aug. 1, 2006.

690

John B. Robins, IV (John B. Robins, IV, P.A., Salisbury), on brief, for petitioners.

Victor H. Laws, III (S. James Sarbanes of Law & Robertson, P.A., Salisbury), on brief, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

This case arises from a dispute between two land owners concerning an alleged right-of-way. Ira R. Pusey, respondent,

contends that he has a right-of-way across R. Alan Banks, Jr.'s and his wife Shirley W. Banks, petitioners, property in order to access a public road. Respondent asserts that he has obtained an easement by prescription over the petitioners' property. On October 26, 2004, the Circuit Court for Worcester County found there to be such an easement by prescription. On November 29, 2004, the Banks filed an appeal to the Court of Special Appeals. On December 13, 2005, the Court of Special Appeals affirmed the Circuit Court in an unreported opinion. On January 6, 2006, the Banks filed a petition for writ of certiorari; we granted certiorari on March 9, 2006. *Banks v. Pusey,* 391 Md. 577, 894 A.2d 545 (2006).

The Banks' petition for writ of certiorari presents two questions for our review:

"(1) Does a presumption of adverse use arise in favor of a person who uses a lane or driveway for ingress and egress to the residence which he occupies with his parents so as to establish, as against the parents and their successors in title, a basis for a prescriptive easement?

"(2) Does the use of a lane or driveway by third party invitees constitute an adverse use that would entitle a person who, with permission, resides on the premises to assert as against the owner a legal right to continue to use and enjoy the access to the premises on the basis of a prescriptive easement?" [1]

Based on the facts of the case *sub judice,* we answer both of the Banks' questions in the negative, and therefore reverse the decisions of the Court of Special Appeals and the Circuit Court. A presumption of adverse use does not arise in favor of a person when that person begins to live jointly with and on his or her parents' property as a minor and then continues to

---

1. Petitioners, in their brief, rephrased the questions presented into five distinct questions. We shall, however, address the questions as they were phrased in the petition for writ of certiorari, as those are the questions for which certiorari was granted.

live on the property along with his or her parents as an adult unless there is clear and convincing evidence that such a person was residing there (or using a particular right-of-way) against his or her parents' will. In addition, the use of a lane or driveway by third-party invitees of a person with permission to use a lane or driveway does not constitute an adverse use in the context of establishing a prescriptive easement because that person's permission is conferred upon their own third-party invitees—as long as the use is within the scope of the permission.

## I. Facts

The disputed alleged right-of-way pertains to a farm lane which runs from respondent's property, across a neighboring property, and across the Banks' property, exiting onto Snow Hill Road. The farm lane is also described as the driveway to the house on the Banks' property.

The parties' properties in question are located southeast of Salisbury—west of Salisbury/Snow Hill Road (Maryland Route 12) and north of Saint Luke's Road—just south of the Wicomico/Worcester County line, in Worcester County. The Banks' property is to the west of and adjacent to Snow Hill Road and consists of approximately 25 acres, a 20–acre portion of which is relevant to the case at bar. The farm lane or driveway runs in a westerly direction from Snow Hill Road across the northern portion of the Banks' property, through a neighboring property (the "Scrimgeour property"),[2] and into respondent's property, a 127–acre parcel of land.

The respondent's property consists of fields in the northern portion and forest in the remainder. The property has no direct road frontage on Snow Hill Road, but has approximately 400 to 500 feet of frontage on Saint Luke's Road. It is undisputed that the better means of access to and from the respondent's property (which is generally used for farming and hunting) is via the farm lane. Testimony was provided at

---

**2.** Harold Scrimgeour, the owner of the property, is not a party to the proceedings before the Court.

trial that the frontage on Saint Luke's Road is low-lying and poorly drained, covered by forest and separated from the road by a ditch.

Respondent's father, Marion L. Pusey, owned both pieces of property from 1949 to 1954. According to respondent's answers to interrogatories, he lived with his family on the parcel which is now the Banks' property from 1939 until 1995.[3] Respondent and his father farmed the land and respondent lived in the residence with his father and step-mother. On March 24, 1954, Marion L. Pusey deeded respondent the 127–acre parcel.

Respondent's father passed away in 1979, at which time what is now the Banks' property was deeded by Marion's personal representative to Marion's second wife, Eva Pusey, for life with remainder to Andrew and Debra Pusey, two of Marion's grandchildren. Respondent continued to live on the property with his step-mother Eva until she died in 1995. At that point, what is now the Banks' property passed to Andrew and Debra; respondent continued to reside in the dwelling and use the farm lane with their consent. In May of 1998, the Banks purchased the property from Andrew and Debra Pusey. Respondent moved and, though no longer residing on the property, continued using the farm lane to cross over the Banks' property and access his 127–acre parcel. Throughout respondent's ownership of his 127–acre parcel (from 1954 on) numerous third-party invitees (farm laborers, timber and power companies, hunters, and others) have used the farm lane to access his property to and from Snow Hill Road.

The trial court judge found that respondent lived on what is now the Banks' property pursuant to the *acquiescence* of his family members. Respondent testified about his living there, stating: "Never asked them. Weren't nothing said about it." When asked as to whether he had permission to stay in the

---

**3.** Respondent was born September 15, 1922, and therefore, would have been approximately seventeen years old when he moved to what is now the Banks' property with his father. Respondent was eighty-one at the time of trial.

house, he stated: "Wasn't nothing said about it. I just stayed." Respondent never had an actual ownership interest in the Banks' property. Respondent testified that when the Banks purchased the property, however, he told them that he had a right-of-way to access his 127–acre parcel via the farm lane. The Banks searched the Worcester County Land Records and did not find any evidence of a deeded right-of-way, but nonetheless allowed respondent to use the farm lane for a period of time. Subsequently, the Banks revoked their consent to respondent's use of the farm lane and erected obstacles to prevent respondent's access. The respondent removed the obstacles and continued to use the farm lane, resulting in this matter being brought before the court.

On May 20, 2004, a non-jury trial was held in the Circuit Court for Worcester County. The trial court heard from fourteen witnesses throughout the course of the day-long trial and found that respondent "proffered a considerable amount of evidence ... that his use of this farm lane has been uninterrupted and exclusive for more than the prescriptive period of twenty years." On October 26, 2004, the trial court filed its opinion, stating:

"[T]his Court finds that [respondent] is entitled to a presumption that his long-standing use of the disputed farm lane was adverse, and that the Banks bear the burden of proving that it was otherwise. After considering all of the testimony and the parties' memoranda it is clear to this Court that the Banks' have failed to satisfy their burden; they only point to the fact that [the respondent] lived on what is now the Banks' property with his parents. As *Dalton*[4] instructs, showing a grant of permission or a license requires more than mere acquiescence on the part of the servient owner; and in the instant case, [respondent] never had any ownership interest in what is now the Banks' property—he resided there only by the acquiescence of the other family members. There is a dearth of evidence to

---

4. *Dalton v. Real Estate & Improvement Co. of Baltimore City,* 201 Md. 34, 92 A.2d 585 (1952).

show he had any permission or license to use the farm lane to serve his farm property in the capacity described by the witnesses who testified. Moreover, [respondent] himself, along with witness after witness denied any kind of permission or license to use the right of way. Thus, this Court can only find that [respondent's] uninterrupted and exclusive use of this road was adverse as well.

"In sum, this Court finds that [respondent's] use of the farm lane was uninterrupted, exclusive, and adverse for at least the prescriptive period of twenty years. Therefore, this Court holds that he has established that he has an easement by prescription in the farm road crossing over the Banks' property. Because this Court finds the [respondent] has an easement by prescription over the Banks' land, there is no need for this Court to further examine [respondent's] arguments that he alternatively has an easement by necessity or by implication over the Banks' land."

The Banks timely appealed to the Court of Special Appeals and, after hearing argument, on December 13, 2005, the Court of Special Appeals issued an unreported opinion affirming the trial court's decision. The Court of Special Appeals found that there was "legally sufficient evidence from which the [circuit] court could conclude the use [of the farm lane] was uninterrupted and exclusive for the prescriptive period." In addition, as to the Circuit Court's presumption that the use of the farm lane was adverse, the Court of Special Appeals addressed the Banks' argument in opposition—that the use was permissive:

"In an effort to show the use was permissive, [the Banks] produced evidence that [respondent] resided on the property with his father and step-mother for more than fifty years and that [*the respondent*] *acknowledged that he had permission.* [The Banks] argue that these facts, along with the fact that [respondent] regarded this property as his home until he moved in 1995, is enough to establish that he resided with the permission of his parents. Moreover, [the Banks] argue, [respondent's] use of the land was not inconsistent with the owners' use, and thus, [respondent] is not entitled to a presumption of adversity."

[Emphasis added]. The Court of Special Appeals, however, agreed with the Circuit Court that the Banks did not produce sufficient evidence to rebut the supposed presumption of adversity. Therefore, the Court of Special Appeals affirmed the Circuit Court's decision, finding that respondent had an easement by prescription over the Banks' property.

## II. Standard of Review

The case at bar was tried by the court without a jury, thus our standard of review is dictated by Maryland Rule 8–131(c). Pursuant to Rule 8–131(c), we review the case on both the law and evidence. We give due regard to the trial court's judgment of the witnesses' credibility and will not set aside the judgment of the Circuit Court unless we find it to be clearly erroneous. Md. Rule 8–131(c). The clearly erroneous standard, however, does not apply to legal conclusions. *Garfink v. The Cloisters at Charles, Inc.,* 392 Md. 374, 383, 897 A.2d 206, 211 (2006); *Gray v. State,* 388 Md. 366, 374, 879 A.2d 1064, 1068 (2005). " 'When the trial court's order "involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." ' " *Gray,* 388 Md. at 375, 879 A.2d at 1068 (citing *Nesbit v. GEICO,* 382 Md. 65, 72, 854 A.2d 879, 883 (2004) (quoting *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609, 612 (2002))). Additionally:

> "[D]iscussing Maryland Rule 886, predecessor to Rule 8–131(c), the Court found that 'it is equally obvious that the "clearly erroneous" portion of [the] Rule [ ] does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact.' *Davis v. Davis,* 280 Md. 119, 124, 372 A.2d 231, 233 (1977) (citing *Clemson v. Butler Aviation–Friendship, Inc.,* 266 Md. 666, 671, 296 A.2d 419, 422 (1972))."

*Garfink,* 392 Md. at 383, 897 A.2d at 211.

The issue raised in this case, whether a presumption of adverse use arises in favor of a person who uses a farm lane

for ingress and egress to the residence which he or she first occupied as a minor and continues to occupy jointly with his or her parents so as to establish—as against the parents and their successors in title—a basis for a prescriptive easement, is a legal question involving the interpretation of Maryland case law as it relates to prescriptive easements. Therefore, we will review the issue *de novo*. In addition, whether the use of a right-of-way by the third-party invitees of a person with permission to use the right-of-way can constitute adverse use is a question of law, and shall be reviewed *de novo*.

### III. Discussion

The Circuit Court found that respondent had the right to use the farm lane in question under the theory of easement by prescription. We discussed easements by prescription in *Jurgensen v. New Phoenix Atlantic Condominium Council of Unit Owners*, 380 Md. 106, 843 A.2d 865 (2004), where the Court stated:

> "An easement is 'a nonpossessory interest in the real property of another.' *Boucher v. Boyer*, 301 Md. 679, 688, 484 A.2d 630, 635 (1984) (citing *Condry v. Laurie*, 184 Md. 317, 320, 41 A.2d 66, 68 (1945)). An easement can be created expressly or by implication. *Boucher*, 301 Md. at 688, 484 A.2d at 635. One type of easement by implication is an easement by prescription, which arises when 'a party makes an adverse, exclusive, and uninterrupted use of another's real property for twenty years.' *Kirby v. Hook*, 347 Md. 380, 392, 701 A.2d 397, 403 (1997). *See also Condry*, 184 Md. at 321, 41 A.2d at 68; *Cox v. Forrest*, 60 Md. 74, 79 (1883). For the party's use to be considered adverse, it must occur without license or permission. *Kirby*, 347 Md. at 392, 701 A.2d at 403; *Dalton v. Real Estate and Improvement Company of Baltimore City*, 201 Md. 34, 41, 92 A.2d 585, 588 (1952). We have held that, '[a]s a general rule, permissive use can never ripen into a prescriptive easement.' *Kirby*, 347 Md. at 393, 701 A.2d at 404; *see also Phillips v. Phillips*, 215 Md. 28, 33, 135 A.2d 849, 851 (1957)."

*Jurgensen,* 380 Md. at 122–23, 843 A.2d at 874–75 (footnote omitted). In order to establish an easement by prescription a person must make an adverse, *exclusive,* and uninterrupted use of another's real property for twenty years. "When a person has used a right of way openly, continuously, and without explanation for twenty years" it is fair to presume adverse use. *Kirby,* 347 Md. at 392, 701 A.2d at 403–04 (citing *Condry,* 184 Md. at 321, 41 A.2d at 68). In such a case, "[t]he burden then shifts to the landowner to show that the use was permissive." *Kirby,* 347 Md. at 392, 701 A.2d at 403–04 (citing *Cox,* 60 Md. at 80). The burden, however, will not shift if the use *appears to have been by permission,* as discussed *infra.* *Cox,* 60 Md. at 79; *Mavromoustakos v. Padussis,* 112 Md.App. 59, 65, 684 A.2d 51, 54 (1996), *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997) ("The presumption applies in Maryland only when the use over the twenty-year period is 'unexplained'—that is, when the claimant of the easement has used the property as he or she sees fit, without asking for or receiving permission to do so.").

### Adverse Use

In the case *sub judice* the parties do not dispute that the respondent made exclusive [5] and uninterrupted use of the farm lane for a period in excess of twenty years. The facts and testimony clearly show that respondent lived on what is now the Banks' property from approximately 1939 when he was a minor until 1998 and from 1954–on he, and numerous third-party invitees of his, used the farm lane to access his 127–acre parcel of land. The trial judge concluded that the witnesses' "testimony convinced th[e] Court that [respondent's] use of the farm lane in dispute was clearly 'uninterrupted' and 'continuous' for well over the statutory period of twenty years." What is primarily disputed, however, is whether respondent's use of the farm lane was adverse during the period of time that he resided with his parents on what is now the Banks' property. If respondent's use of the farm lane was

---

5. Nonetheless, it appears to this Court that his use was not exclusive.

not adverse during the relevant period of time that he resided on his parents' property then, even if *arguendo* the use became adverse once the Banks obtained the property, it would not satisfy the required twenty-year time period.[6]

Respondent argues that there is a presumption of adverse use in the case *sub judice* because respondent used the farm lane openly, continuously, and without explanation for more than twenty years while residing with and on his parents' property. The trial judge stated: "This Court has found ample evidence that [respondent] used this farm lane open and continuously for well over twenty years. Therefore, this Court affords [the respondent] the benefit of the presumption that his use of this lane was adverse, thereby shifting the burden of proving his use was permissive upon the Banks." Respondent cited to several cases in support of this: *Kirby*, 347 Md. at 392, 701 A.2d at 403–04; *Shuggars v. Brake*, 248 Md. 38, 45, 234 A.2d 752, 757 (1967); *Wilson v. Waters*, 192 Md. 221, 227, 64 A.2d 135, 137 (1949); *Mahoney v. Devonshire*, 86 Md.App. 624, 635, 587 A.2d 1146, 1151 (1991); *Forrester v. Kiler*, 98 Md.App. 481, 485, 633 A.2d 913, 915 (1993); *Potomac Elec. Power Co. v. Lytle*, 23 Md.App. 530, 534–35, 328 A.2d 69, 73 (1974); and *Zehner v. Fink*, 19 Md.App. 338, 344, 311 A.2d 477, 480 (1973). The Court of Special Appeals agreed with the Circuit Court's finding that the Banks did not produce sufficient evidence of permission to rebut the presumption of adverse use.

█ While we recognize that a presumption of adversity may possibly arise under some circumstances; such a presumption will not arise if the use of the farm lane *appears to have been by permission*. *Cox*, 60 Md. at 79. The Court discussed adverse use—as it relates to prescriptive easements—in *Cox* over a century ago, stating:

---

**6.** Respondent would only have been using the farm lane from 1998 until the complaint was brought in 2004—six years, significantly less than the required twenty. From 1995 to 1998 respondent lived on the property with the permission of his niece and nephew. Testimony at trial indicates that he paid them rent.

"By *adverse* is meant a *user*, without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment, **the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right.** Where one, however, has used a right of way for twenty years **unexplained,** it is but fair to presume the user is under a claim of right, **unless it appears to have been by permission.** In other words, the use of a way over the lands of another whenever one sees fit, and without asking leave, is an *adverse* use, and the burden is upon the owner of the land, to show that the use of the way was by license or contract inconsistent with a claim of right."

60 Md. at 79–80 (citations omitted) (bold emphasis added). The presumption of adverse use will not arise if the use of the land appears to have been by permission. As the Court stated in *Cox*, "the real point of distinction being between a permissive or tolerated user, and one which is claimed as a matter of right." 60 Md. at 79. Respondent argued below and argues here that he did not live on his parents' property from 1939 through 1998 with their permission or tolerance, only with their acquiescence.

*Black's Law Dictionary* defines a "presumption" as "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." *Black's Law Dictionary* 1223 (8th ed.2004). Logic dictates that a presumption of adverse use is created *only* when there is an absence of *any* evidence which would indicate that the respondent had the permission of his parents to use the farm lane for access to his 127–acre parcel. Or, phrased another way, it is only when no appearance of permission permeates the record, that a presumption of adverse use will arise. In the absence of such a presumption of adverse use, the burden of establishing such use is on the party claiming it. This is supported by the general rule that the creation of an easement by prescription is not favored by the law. 3 Herbert T. Tiffany, The Law of Real Property, § 796 (3d ed.1939, 2006 Supp.); *Elder v. Northwest Timber Co.*, 101 Idaho 356,

358, 613 P.2d 367, 369 (1980); *Engel v. Rhen Marshall, Inc.,* 206 Neb. 265, 269–70, 292 N.W.2d 307, 310 (1980); *Williams v. Harrsch,* 297 Or. 1, 6, 681 P.2d 119, 122 (1984); *Wiegand v. Riojas,* 547 S.W.2d 287, 289 (Tex.Civ.App.1977).

At trial, the Banks argued that respondent's use must have been permissive under the circumstances, i.e., that he lived with his father and step-mother, on their property, and that his father had deeded the 127–acre parcel to him, yet he continued to reside on what is now the Banks' property with his family in the family home. This is an admission that his presence on the farm was with his parents' permission. In other words, making use of the language in *Cox,* respondent's use of the farm lane *appeared to have been by permission.* 60 Md. at 79. The Circuit Court dismissed this argument, relying on several cases to argue that the circumstances of the case *sub judice* do not indicate that respondent's use of the farm lane was permissive. We disagree, finding the cases which the Circuit Court and respondent rely upon to be distinguishable from the factual circumstances extant in this particular case.[7]

The Circuit Court first looked to *Dalton v. Real Estate and Improvement Co. of Baltimore City,* 201 Md. 34, 92 A.2d 585 (1952). Similar to the case *sub judice, Dalton* concerned the use of a right-of-way. The appellee, the servient owner, argued that the "use of a right of way will be deemed

---

7. All of Maryland's cases concerning prescriptive easements—particularly those cited by the parties in this case, as well as the Circuit Court and Court of Special Appeals in their opinions—appear to be the progeny of *Cox: Jurgensen,* 380 Md. at 123, 843 A.2d at 874; *Kirby,* 347 Md. at 392, 701 A.2d at 403; *Clayton v. Jensen,* 240 Md. 337, 342, 214 A.2d 154, 158 (1965); *Dalton,* 201 Md. at 41, 92 A.2d at 588; *Lichtenberg v. Sachs,* 200 Md. 145, 149, 88 A.2d 450, 452 (1952); *Feldstein v. Segall,* 198 Md. 285, 295, 81 A.2d 610, 615 (1951); *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 461, 65 A.2d 580, 585 (1949); *Wilson v. Waters,* 192 Md. 221, 227, 64 A.2d 135, 137–38 (1949); *Condry,* 184 Md. at 321, 41 A.2d at 68; *Mavromoustakos,* 112 Md.App. at 65, 684 A.2d at 54; *Mahoney,* 86 Md.App. at 635, 587 A.2d at 1151; *Kiler v. Beam,* 74 Md.App. 636, 639–40, 539 A.2d 1138, 1139–40 (1988); and *Zimmerman v. Summers,* 24 Md.App. 100, 105–06, 330 A.2d 722, 726–27 (1975).

permissive where the use is by members of a family holding contiguous tracts." *Id.* at 44, 92 A.2d at 590. The Court referred to its previous holding in *Lichtenberg v. Sachs,* 200 Md. 145, 88 A.2d 450 (1952)—where a familial relationship argument was also made—stating that, "in such circumstances, *whether the user is permissive or adverse would be properly determined by reference to all of the circumstances of the case and more particularly the character and location of the way or place of passage." Dalton,* 201 Md. at 45, 92 A.2d at 590 (emphasis added). In addition, the Court found that "[m]ost of the cases cited by the appellee on the point that use of a family road will be presumed to be permissive are decided on the point that the facts in the particular case control, and that *the relationship of the parties and the mutuality of user are but facts to be considered with other facts." Id.* (emphasis added).

*Dalton* involved a large tract of land on which three sisters lived during a life estate of their father. All three sisters lived with their father with his permission in the family home on the property.[8] Upon their father's death the property was partitioned into three separate parcels—one for each daughter. The case arose out of the claim by one of the sisters of a prescriptive easement over one of the other sister's parcel of property. As stated *supra,* the sister who owned the servient parcel asserted that use of a right-of-way should be deemed permissive when such use is between family members. The Court, however, found that:

> "The use of [the right-of-way] by Mrs. Dalton when she was a co-tenant was as of right.[9] If, as we assume, there was no intention of the sisters [at the time of partition] to

---

**8.** They were co-tenants only as to the title to the remainder rights. While their father lived, they were occupants of the property with his permission not co-tenants of the life estate. They became co-tenants of the title to the fee only upon his death and until the partitioning of the property.

**9.** This would have been as a co-tenant of the remainder prior to her death. She actually used the property prior to her father's death, not as a co-tenant as to use, but by permission.

convey a right to the road by their deed, then after it the use by Mrs. Dalton must have been adverse because there is nothing in the case to show or suggest that she was ever given permission by [the appellee—the sister owning the servient property], and nothing indicating that until well after the prescriptive period had run, any denial of a right to use the road was made to Mrs. Dalton by anyone. Mere failure to protest is not permission but acquiescence. *Tiffany,* work cited, Section 1196. In *Alstad v. Boyer* [, 228 Minn. 307, 37 N.W.2d 372 (1949) ] ... the Court expressed it as follows [ ]:

> '*Acquiescence* is the inactive status of quiescence or unqualified submission to the hostile claim of another, and is not to be confused with *permission,* which denotes a grant of permission in fact or a license.'

See also *Burnham v. Burnham,* [130 Me. 409, 156 A. 823 (1931) ].

There is no evidence that Mrs. Dalton has even given or evidenced recognition that her sister or the appellee had a right to put an end to the use of [the right-of-way].

Under the circumstances there is nothing to rebut the usual presumption that the open, uninterrupted and exclusive use of [the right-of-way] since 1909 by Mrs. Dalton was adverse. Since the appellee has not met its burden of showing that it was otherwise, we find that the appellant has the prescriptive right to use [the right-of-way] on the land of the appellee."

*Dalton,* 201 Md. at 49–50, 92 A.2d at 592–93.

As is clear, *Dalton* is distinguishable factually from the case *sub judice.* During the brief period when the sisters were co-tenants of the fee, the use of the disputed right-of-way was by right. It was not until the land was partitioned that the use of the right-of-way became adverse. Therefore, the servient owner's argument that the familial relationship between the two sisters called for an implication of permission is inapposite to the facts of the case *sub judice.* Where, in *Dalton,* the adverse use is between two family members with independent

ownership of separate parcels of land, respondent—in the case *sub judice*—is asserting that his use of the farm lane was adverse *while* he resided on his parents' property in the family home jointly with his parents, having no ownership interest in the property. The fact that the respondent lived jointly with his parents on their property is a fact that should be considered along with the fact that the disputed farm lane was used as a driveway for his parents' property. As the *Dalton* Court expressed, "whether the user is permissive or adverse would be properly determined by reference to all of the circumstances of the case and more particularly the character and location of the way or place of passage." 201 Md. at 45, 92 A.2d at 590.

There was absolutely no evidence in the case *sub judice* that respondent's parents acquiesced (made an unqualified submission to the hostile claim of another) to respondent's use of the lane. They simply acted like parents. They permitted their son, the respondent, initially as a minor, then as an adult to live in the family home and use the farm lane, which provided access for ingress and egress to that home. There is no evidence in the record that shows that respondent's use of the farm lane was hostile or that his parents submitted to his use—as opposed to permitting his use—of the right-of-way.

The Circuit Court next looked at *Phillips v. Phillips*, 215 Md. 28, 135 A.2d 849 (1957). *Phillips* concerned a dispute over the use of a driveway between a mother and son. In *Phillips*, the Court, citing *Dalton*, found that a family relationship between parties "is only one of the facts to be considered, and is not controlling." [10] *Phillips*, 215 Md. at 34, 135 A.2d at

---

**10.** The term familial relationship describes all family relationships and its use without further explanation would encompass many relationships between family members where adverse use might arise to a presumption. The familial relationship in the case at bar, however, is much more than a mere familial relationship. Respondent actually accompanied his parents as a minor when they moved onto the property and jointly lived with them on the property thereafter. At the time he moved onto the property they had a responsibility to see to his shelter and maintenance. The performance of such a duty is not acquiescence.

851. As in *Dalton*, the contended adverse use in *Phillips* did not occur while the son lived with his parents on their property. It began after he moved to a piece of property adjacent to his mother's and lived exclusively and independently on his own.

In addition, the Circuit Court referred to *Zehner*, 19 Md. App. 338, 311 A.2d 477, which relied on *Dalton* and *Phillips* in stating the proposition that a "family relationship without more is insufficient to support a finding that the use at the time was with permission." *Zehner*, 19 Md.App. at 345, 311 A.2d at 481. The factual circumstances in *Zehner*, however, also did not establish that the adverse use occurred during the time period that the family members resided together on the same piece of property.

The cases presented by respondent or referenced in the decisions of the Circuit Court and the Court of Special Appeals do not relate to the situation present in the case *sub judice*—that of a child asserting adverse use of his or her parents' property (in this case the farm lane or driveway) during a period in which the minor child first makes his or her main and permanent residence on the property, in the family home with his or her parents. The cases do not negate the presumption of permission that arises when a minor child lives with his or her parents.

In addition, respondent referenced a fairly recent Massachusetts decision in which that court, in the context of adverse possession, rejected a family relationship presumption of permissiveness. *Totman v. Malloy*, 431 Mass. 143, 725 N.E.2d 1045 (2000). The Supreme Judicial Court of Massachusetts, however, addressed the defendant's (the party urging the adoption of a familial presumption of permissiveness) argument by distinguishing the Missouri case of *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo.Ct.App.1980). The Massachusetts court first cited to jurisdictions that recognize some form of presumption of permissive use:

"See *Bellamy v. Shryock*, 211 Ark. 116, 122–123, 199 S.W.2d 580 (1947) (stronger evidence of hostility required to

rebut presumption of permissive use where parent-child relationship between adverse claimants and true owner); *Kelly v. Mullin,* 159 Colo. 573, 577–578, 413 P.2d 186 (1966) ('strong proof' of hostility required where true owner is relative of claimants). See also *Matter of the Estate of Qualteri,* 757 P.2d 1093, 1095 (Colo.Ct.App.1988) (court declines to adopt presumption of permissive use among family members, but holds that 'strong proof' of hostility is required); *Mullan v. Bank of Pasco County,* 101 Fla. 1097, 1107, 133 So. 323 (1931) (possession by parent of child's land usually presumed permissive 'subject to certain general exceptions' where family lived together as 'homestead'); *Parker v. Beckwith,* 251 Mich. 434, 437, 232 N.W. 208 (1930) (father could not acquire title by adverse possession against daughter living in household with him during a portion of the time required to establish claim); *Tyler v. Wright,* 164 Mich. 606, 608, 130 N.W. 205 (1911) (close relationship of parent and child may raise presumption of permissive use, but relationship alone not conclusive where no evidence of their friendly relationship); *O'Boyle v. McHugh,* 66 Minn. 390, 391, 69 N.W. 37 (1896) (possession and cultivation of land by mother not enough to rebut presumption of permissive use vested in relationship with children); *Chase v. Lavelle,* 105 Neb. 796, 801, 181 N.W. 936 (1921) (use of land by child presumptively permissive); *Demmitt v. McMillan,* 16 Ohio App.3d 138, 141, 16 OBR 146, 474 N.E.2d 1212 (1984) (family relationship between parties imposes higher burden of proof on adverse claimant); *Fehl v. Horst,* 256 Or. 518, 522, 474 P.2d 525 (1970) (possession of land presumed permissive where mother shared a household with daughter and son-in-law); *Harlow v. Miller,* 147 Vt. 480, 482, 520 A.2d 995 (1986) (presumption that use is permissive and amicable within family relationship 'second ground' to support lower court's finding that possession not adverse)."
*Totman,* 431 Mass. at 147 n. 5, 725 N.E.2d at 1048–49 n. 5. The court then distinguished *Tallent* from those cases, stating:

"There the [*Tallent* ] court held that three sons who lived with their mother in her household until her death could not

claim the land owned by their mother by adverse posses-
sion. The Missouri Court of Appeals explained that a
'rightful owner cannot be deprived of title by possession of
another if he is also in possession with the adverse claimant
as joint possession is not adverse.' [*Tallent,* 598 S.W.2d at
606], citing *Fiorella v. Jones,* 259 S.W. 782, 785 (Mo.1923).
Additionally, many of the cases from other States recogniz-
ing such a presumption involve cotenants or minor children
living with their parents for part or all of the required time
period. The case before us, however, involves a parent and
an adult son and daughter-in-law to whom title had been
conveyed. They were not living as cotenants but rather as
neighbors on abutting parcels."

*Totman,* 431 Mass. at 147–48, 725 N.E.2d at 1049. The case
*sub judice,* though in the context of an easement by prescrip-
tion, concerns different factual circumstances than *Totman*
and is therefore more like the presumption of permissive use
cases cited *supra.* Respondent first lived as a minor with his
parents on their property, presumably with their permission,
and then, when an adult, lived there not exclusively, but jointly
with them. This is not a case where during all parts of the
relevant time period respondent had exclusive use of the
residence and property. During portions of that time period
he resided with his parents and others, thus his use was joint
and not exclusive.

Respondent was a minor when he originally moved onto
what is now the Banks' property. He moved there with his
father and family, lived in the family home and participated in
the family farming operations. He continued to live and
reside on the property once he reached the age of majority—
with no change in circumstances. Respondent did not leave
his family home until 1998, when his nephew and niece,
Andrew and Debra Pusey, the then-owners of the property,
sold the property to the Banks. Neither party contends, nor
is it evident from the facts, that there was any kind of "ouster"
of respondent (which would reflect a change of circumstances)
from what is now the Banks' property during the time in
which he lived there.

■    Respondent's use of the farm lane was permissive when he was a minor and there was no affirmative evidence that it ever ceased to be permissive during the course of his subsequent residence upon the property and his use of it. As we stated in *Feldstein v. Segall*, 198 Md. 285, 295, 81 A.2d 610, 615 (1951), ". . . use originally permissive or of right is presumed to continue, and there must be affirmative evidence of change to adverse use." *Feldstein* concerned a dispute over a right-of-way in an alley in Baltimore City. The Circuit Court found that an easement had been established both by necessity and continuous adverse usage of the alley. *Feldstein*, 198 Md. at 293, 81 A.2d at 614. Our Court stated that, "[a]n easement cannot be established both by necessity and by prescription. If it is established by necessity, it cannot be established again by prescription." *Id.* at 294, 81 A.2d at 615. The plaintiffs contended that they had established a widened right-of-way to the alley by prescription. The Court addressed that contention, finding that "[i]t may be assumed that a widened right of way, no less than a new one, may be acquired by prescription. *But use originally permissive or of right is presumed to continue, and there must be affirmative evidence of change to adverse use." Id.* at 295, 81 A.2d at 615 (emphasis added).

■    In addition, though addressing adverse use in the context of adverse possession rather than prescriptive easements, we stated in *Hungerford v. Hungerford*, 234 Md. 338, 341, 199 A.2d 209, 211 (1964), "[m]oreover, since an original permissive possession is presumed to continue, there can be no change to an adversary possession in the absence of affirmative evidence of that fact." The Court in *Hungerford* addressed the "hostility" element of adverse possession.[11] The Court stated:

---

11.  " 'Possession to be adverse must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the statutory period of twenty years.' " *Hungerford*, 234 Md. at 340, 199 A.2d at 210 (quoting *Bishop v. Stackus*, 206 Md. 493, 498, 112 A.2d 472, 474 (1955)).

"It has long been held by this Court that where the original entry and subsequent occupancy of land was under a contract, or with the consent or permission of the owner, the possession would not be hostile or adverse and could not evolve into a subsisting title on which recovery could be had, unless the record owner had notice that the continuing possession was under a claim of right, since it is the intent with which possession is continued that gives it its character as adversary. *Armstrong v. Risteau*, 5 Md. 256 (1853); *Waltemeyer v. Baughman*, 63 Md. 200 (1885); *Feldstein v. Segall*, 198 Md. 285, 81 A.2d 610 (1951)."

*Hungerford*, 234 Md. at 341, 199 A.2d at 211. There was no affirmative evidence of change to adverse use in the case *sub judice*.

Respondent asserts that he resided (and made use of the farm lane) on what is now the Banks' property only by the acquiescence of his family members—not with their permission or tolerance. *See Cox*, 60 Md. at 79. At trial, respondent was questioned by the Banks' counsel about living on the property:

"[Banks' Counsel]. When you moved in to live with your parents [at the age of sixteen], did you have their permission to do that?

[Respondent]. Did I have whose permission?

[Banks' Counsel]. Your parents.

[Respondent]. I was farming with my parents, with my father, and we moved there to farm the land.

[Banks' Counsel]. Okay. Now, did they say that it was all right for you to live there with them?

[Respondent]. Never asked them. Weren't nothing said about it.

[Banks' Counsel]. Okay. Did they ever ask you to move out?

[Respondent]. No."

When asked about his use of the farm lane and whether anyone had ever denied him permission to use it to access his

127–acre parcel, respondent replied: "I didn't ask nobody. I just went on through." At trial, the Banks' counsel also questioned respondent about his rights in relation to the farm lane—the resulting colloquy took place:

"[Banks' Counsel]. Did you ever tell your father that you were claiming a legal right to a continued easement over his property?

[Respondent]. No, we never discussed it.

[Banks' Counsel]. All right. At any time during the period of time, fifty years or so, that you were using the lane did you ever tell your father that he could not use the lane?

[Respondent]. That I could not use it?

[Banks' Counsel]. No. Did you tell your father that he could not use the lane to get to his house?

[Respondent]. No, sir. I never did, and I better not.

[Banks' Counsel]. Are you suggesting to the court that you were using the lane without your father's permission?

[Respondent's Counsel]. Objection. That's for the court to decide.

[The Court]. Well, no. That's a fair question. Overruled. I think he's already answered it really.

[Banks' Counsel]. I think it's fairly clear, but I'm not sure that he did answer it. Are you claiming that you did not have permission from your father to use the lane to the house?

[Respondent's Counsel]. Objection for the record.

[The Court]. All right. Go ahead and answer it.

[Respondent]. I'm not claiming that I didn't have the right to use nothing. I'm claiming that I did. But how did I get in and out if I didn't?"

The trial court found respondent's answers above to be indicative of mere acquiescence on the part of his parents to his use of the farm lane. However, the fact that a minor lives with their parents is strong evidence of permissive use and a presumption of permission will generally arise in such circum-

stances. The respondent moved onto the property while a minor living with his parents. Respondent, moreover, never denied that he had permission from his parents to reside on or make use of what is now the Banks' property while still a minor—or ever. He offered no affirmative evidence to the contrary. He simply said that he never asked them. This is not atypical in a parent-child relationship. Children quite often do not ask for permission to do things that they are permitted to do (almost as often as not asking about things which they are not permitted to do). It is understood that parents have a responsibility to care for their children until the children reach the age of majority. Therefore, minor children reside on their parents' property impliedly with their parents' permission and, as such, they need not ask for permission to make use of the property. Many children, in fact, continue to reside on their parents' property past the age of majority—for any number of reasons, which we shall not expound upon here. While living on one's parents' property and residing in the family home it is logical that the permission to live there extends to the use of, in this case, the farm lane or driveway. This is further supported, in the case *sub judice,* by the factual evidence that respondent moved to what is now the Banks' property with his parents, by his own admission, where they were going to farm the land, an activity which would require use of the farm lane.

When respondent as a minor moved to the property with his parents, both it and respondent's later-acquired 127–acre parcel were farmed by his father.[12] Both respondent and his father used the farm lane to access and farm the 127–acre parcel from 1939 to 1954 (when the 127–acre parcel was deeded to respondent by his father) and throughout the time respondent resided on what is now the Banks' property. Respondent had permission to utilize the farm lane when he

---

**12.** Between 1949 and 1954, respondent's father owned both properties—respondent's grandfather, William V. Parsons, owned the 127–acre parcel from 1931 to 1949 (the property was briefly conveyed to the Corddry Company on June 3, 1949 and then directly conveyed to Marion Pusey that same day).

was a minor and that permission is presumed to continue absent any affirmative evidence of a change in circumstances to adverse use. *See Feldstein*, 198 Md. at 295, 81 A.2d at 615; *cf. Hungerford*, 234 Md. at 341, 199 A.2d at 211 (original permissive use presumed to continue—in the context of adverse possession). There was no evidence that respondent exercised his permissive use of the farm lane after his majority in any manner different from how he used it as a minor or in any manner hostile to his parents' intentions while farming the 127–acre parcel with his father prior and subsequent to the property being deeded to him.

We find, therefore, that the Circuit Court improperly interpreted the law concerning prescriptive easements and the Court of Special Appeals improperly affirmed the Circuit Court's decision. A presumption of adverse use arises when a person has used a right-of-way openly, continuously, and *without explanation* for twenty years, *unless the use appears to have been by permission. Kirby*, 347 Md. at 392, 701 A.2d at 403–04; *Cox*, 60 Md. at 79. While familial relationships do not necessarily, in all situations, create an inference of permissive use, they are a factor to be considered and are especially relevant when a child moves onto the property while a minor during a period when the parents have legal responsibility for the child, as in the case *sub judice*. Not only do the parents, in such circumstances, permit the presence of the child, but, generally are legally required to do so. In such cases a presumption of permission is created. And in cases such as the case *sub judice*, where an individual resides on his parents' property from the time he or she is a minor, his or her use of the property shall be deemed permissive absent any affirmative evidence of a change in circumstances to adverse use. There was insufficient affirmative evidence in this case to rebut that the use was permissive.

The position taken by the trial court and affirmed by the Court of Special Appeals, based upon their perceptions of the holdings in the cases of *Lichtenberg, Dalton, Phillips*, and *Zehner*, might cause serious questions in respect to farmland

titles (and perhaps title to other lands as well) throughout the State. It could create serious problems for elderly farmers who have farmed their lands including their children in their farming operations and in their family life. Such a farmer's ability to sell his land, could be, under the positions taken by the lower courts, severely compromised by children who allege that they have lived with their parents not by permission, but by mere acquiescence. Were the positions taken below affirmed, no title examiner could warrant that any farmer who permits, or has permitted his children to live with him or her for the prescriptive period (or adverse use period), has valid title, free and clear of encumbrances such as easements and right-of-ways. It would seriously impair the marketability of farm titles (and perhaps other forms of property owned by parents, with their children involved in the operation of the family business). To the extent the cases mentioned above in this paragraph are not distinguishable, they are modified to conform with this opinion.

## Third–Party Invitee Use

Respondent also points to the use of the farm lane by his third-party invitees as indicative of adverse use. A large part of the testimony at trial showed that the farm lane was used by farm laborers, timber and power companies and hunters for ingress and egress to respondent's 127–acre parcel. It was generally evident that these third-party invitees did not receive permission to use the farm lane from the owners (respondent's parents) of what is now the Banks' property, but from the respondent himself. The use of the farm lane by the third-party invitees in the case *sub judice,* however, was consistent with how respondent himself had always used the farm lane. As discussed *supra,* there was no change in circumstances as to how respondent used the farm lane from the time that he impliedly had his parents' permission. The use of the farm lane by respondent's third-party invitees was consistent with his "permitted" use. Therefore, such use by the third-party invitees does not constitute an

adverse use that would entitle respondent to assert a prescriptive easement.

## IV. Conclusion

We find that under the facts here present, a presumption of adverse use did not arise from either respondent's or respondent's third-party invitees' use of the farm lane in question. Therefore, the Circuit Court incorrectly found that respondent had an easement by prescription over the Banks' property to use the farm lane for ingress and egress to his 127–acre parcel. Thus, we reverse the judgment of the Court of Special Appeals. At trial, respondent argued alternatively that he has an easement by necessity or implication over the Banks' land. As the Circuit Court did not address those arguments, we remand this case to that court for further proceedings.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.**